EAGLE LUMBER & SUPPLY Co. *et al. v.* DE WEESE *et al.*

(Division A. June 15, 1931. Suggestion of Error Overruled, July 24, 1931.)

[135 So. 490. No. 28755.]

Green & Green, of Jackson, for appellant.

**Wells, Jones, Wells & Lipscomb,** of Jackson, for appellant.

608

F. W. Bradshaw, Flowers, Brown & Hester, and **M. A. Pilgrim**, all of Jackson, for appellees.

Flowers, Brown & Hester, of Jackson, for appellees.

612

Argued orally by **L. Barrett Jones** and **Garner W. Green**, for appellant, and by **M. A. Pilgrim** and **C. L. Hester**, for appellees.

**McGowen, J.,** delivered the opinion of the court.

On November 8, 1928, A. De Weese exhibited his bill in equity against the Eagle Lumber & Supply Company and the Jackson-State National Bank, appellants; also, against J. E. Golden, Jr., Dr. I. C. Huggins and wife, alleging, in effect, that on June 21, 1927, Dr. Huggins and his wife were indebted to the complainant in the sum of

five thousand dollars; and on that date they evidenced the said debt by their certain forty promissory notes for one hundred twenty-five dollars each, and a deed of trust on a certain house and lot in the city of Jackson, securing same; that said deed of trust and notes were payable to J. E. Golden, trustee for A. De Weese, and in the deed of trust L. B. Jones was named as trustee for the purpose of holding or conveying the title; and that the deed of trust was promptly and duly recorded.

The bill further alleged that on January 24, 1928, J. E. Golden, Jr., without the knowledge and consent of De Weese, and without authority, and with the intention of appropriating the indebtedness to his own personal use and benefit, thereby defrauding De Weese, procured a second deed of trust from Dr. Huggins and wife upon the same property, and for the same indebtedness, making the notes, and deed of trust securing same, payable to himself, J. E. Golden; that said deed of trust and note were executed on January 23, 1928; the said paper bore date of June 15, 1927, but was acknowledged January 23, 1928.

The bill further charged that on the same day that Huggins executed the deed of trust to Golden individually, the latter assigned to the Jackson-State National Bank the new note for four thousand two hundred fifty dollars, and the trust deed securing same, to secure a loan of two thousand five hundred dollars made by said bank to Golden individually; and that on February 9, 1928, said Golden assigned the same papers to the Eagle Lumber & Supply Company to secure a pre-existing debt. It is further charged that on February 9th, J. E. Golden, assuming to act as trustee for A. De Weese, fraudulently canceled the record of the first trust deed for five thousand dollars, on the margin thereof in the chancery clerk's office.

The bill further charged that both the Jackson-State National Bank and the Eagle Lumber & Supply Com-

pany had constructive notice that the indebtedness, represented by said notes and by the deed of trust, was owned by A. De Weese, and charged actual and constructive notice, and asserted that he was entitled in equity to have the debt and security therefor vested in him, De Weese, and the claims of the bank and the lumber company canceled, in so far as his claim thereto was concerned.

The bill prayed for a cancellation of all claims of the Jackson-State National Bank, and of the Lumber Company, and of Golden, to the note and the deed of trust; prayed that the defendant be required to deliver up the note and deed of trust, and for a decree for all moneys collected by the bank and the lumber company from Huggins; and for the cancellation of the second deed of trust executed by Huggins to Golden individually.

The answers denied any fraud on the part of either the bank or the lumber company, asserting that both were purchasers for value without notice, either actual or constructive; and further averred that the cancellation of the first deed of trust on the margin of the record by J. E. Golden, trustee for A. De Weese, was valid and binding to fully cancel and annul that deed of trust. The bank asserted that it made the loan in good faith, without any notice, either actual or constructive.

The court below, after hearing the evidence, entered a decree for appellee De Weese that the indebtedness owed by Huggins and his wife in the amount of four thousand two hundred fifty dollars, secured by the deed of trust executed in favor of J. E. Golden, Jr., was owned by A. De Weese; and that the assignments held by the bank and the Eagle Lumber & Supply Company were subordinate to the rights of De Weese, taken with full notice that the indebtedness was owned by De Weese, and that Golden had no interest therein which he could assign. The court further entered a decree vesting the title to the balance due on said note and deed of trust in A. De

Weese, the original amount being four thousand two hundred fifty dollars; and canceled the assignments thereof, entering a decree against the bank for the sum of five hundred twenty-five dollars and five cents, the amount collected by it from Huggins; and also against the Eagle Lumber & Supply Company for the sum of four hundred fifty-one dollars and fifty cents, the amount collected by it from Huggins; and further directed that Huggins and his wife pay the balance of the indebtedness to A. De Weese; and rendered a decree against J. E. Golden for the sum of seven hundred fifty dollars, collected by him from Huggins and wife between the deeds of the first and second mortgage, with interest from date of decree.

The above-named bank and lumber company prosecuted an appeal here.

In the statement of facts we deem it best to set forth an abstract of what is shown by the record in the office of the chancery clerk, with reference to the transaction involved.

On February 11, 1926, Wicks, Klumb, and Haynes conveyed to J. E. Golden a lot at the intersection of Hazel and Pinehurst streets, for a consideration of five hundred dollars cash, five hundred dollars due in six months, and one thousand two hundred fifty dollars due twelve months thereafter.

On April 28, 1926, Wicks, Klumb, and Haynes conveyed to Mrs. Bennie Golden, the wife of J. E. Golden, Jr., the lot parallel with Hazel street, for a consideration of one hundred dollars in cash, four hundred dollars due in thirty days, and one thousand dollars due in six months.

On February 8, 1927, Golden and his wife conveyed part of the above lot to John W. Robinson for eight hundred dollars. On the 21st day of June, 1927, Mrs. Golden conveyed to I. C. Huggins and wife, Mrs. Lucile H. Huggins, a part of the above lot for a consideration of two

thousand five hundred dollars, and other good and valuable considerations.

On June 21, 1927, I. C. Huggins and wife executed a deed of trust on the lands above conveyed by Mrs. Golden to them, which deed of trust recites, in part, as follows:

"Whereas, the undersigned grantors, I. C. Huggins and Lucile Hendricks Huggins, his wife, owe J. E. Golden, trustee for A. De Weese, hereinafter called the beneficiary, the sum of five thousand no/100 dollars evidenced by promissory notes of even date herewith, bearing interest at the rate of six per cent per annum, payable as follows, to-wit:

"The principal of this loan is due and payable in forty monthly installments of one hundred twenty-five dollars each, the first due and payable on the 15th day of August, 1927, with a similar installment falling due on the 15th day of each and every month thereafter until all forty installments have become due and payable. Interest at the rate of six per cent per annum is payable monthly on each installment, as same falls due.

"And, whereas, the undersigned are anxious to secure the payment of said indebtedness at the maturity thereof; therefore, in consideration of five dollars, to them paid by L. Barrett Jones, trustee, the receipt whereof is hereby acknowledged, the undersigned grantors, whether one or more, do hereby convey and warrant unto said L. Barrett Jones, trustee;" then follows a description of the property.

On January 23, 1928, I. C. Huggins and wife executed a deed of trust on the same land to secure the payment of four thousand two hundred fifty dollars owing to J. E. Golden, evidenced by notes payable in monthly installments, beginning February 15, 1928, each for one hundred dollars. The property so conveyed to L. Barrett Jones, as trustee, with J. E. Golden as beneficiary, bore

date of June 15, 1927, was acknowledged by the grantors on January 23, 1928, and recorded January 26, 1928.

On January 23, 1928, J. E. Golden executed an assignment of a deed of trust recorded January 26, 1928, for four thousand two hundred fifty dollars to the Jackson-State National Bank to secure the payment of a loan of that date due the bank. This assignment was acknowledged and recorded on January 27, 1928.

On February 8, 1928, J. E. Golden executed a second assignment of the same indebtedness and trust deed to the Eagle Lumber & Supply Company, to secure a pre-existing debt, which was promptly recorded.

On the margin of the record of the assignment to the Jackson-State National Bank there appears in writing an assignment of the collateral security, described therein by the bank to the Eagle Lumber & Supply Company without recourse, which latter assignment is dated November 6, 1928.

On the margin of the record in the clerk's office of the deed of trust first executed by Huggins and wife in favor of J. E. Golden, trustee for A. De Weese, recorded on June 21, 1927, there appears this entry: "Satisfied and cancelled in full this February 9, 1928. J. E. Golden, trustee for A. De Weese. Attest W. W. Downing, chancery clerk by R. S. Seay, D. C." And it is around this cancellation that the battle rages in this case.

The oral evidence, necessary to state, is substantially as follows: Early in the year 1926, J. E. Golden, living at Jackson, and A. De Weese, living at Philadelphia, Mississippi, entered into an agreement by which Golden was to purchase lots, and De Weese was to furnish money to pay for and improve same, which were to be sold, either improved or unimproved; and if a net profit was made on the venture, J. E. Golden was to have one-fourth of the net profit for his services, and De Weese three-fourths. Deeds to the property were to be taken in the name of A. De Weese. It was agreed between them, prior

to the Huggins deed, that certain other lots, situated in a certain subdivision, might be taken in the name of J. E. Golden, trustee, apparently for quick sale. Some months before the Hazel street transaction, De Weese became suspicious that Golden was not making fair settlements with him. De Weese testified positively that he supplied the purchase money for the purchase of one of the lots, on a part of which Golden built a house, sold a part to Robinson, and the remainder to Huggins, amounting to one thousand five hundred dollars. De Weese knew that the house was being erected on the lot conveyed to Huggins, and knew that he never received any deed, although he paid the money therefor; but he did not discover any of the transactions, as reflected by the record, as we have set forth above, until he employed an attorney and auditor in the summer of 1928, long subsequent to the assignments to the bank and the lumber company, when he discovered the state of affairs. He thought that the deed to the Huggins lot had been made to him, and that the security for the Huggins indebtedness, had been taken in his name, and did not know what the records showed until the summer of 1928, when he discovered that Golden had been unfaithful to the trust imposed in him, and owed him in excess of fourteen thousand dollars. He never discussed with Huggins, the lumber company, or the bank the subject of his claim, until the summer or fall of 1928. In short, De Weese knew very little of what was being done by Golden, and took no steps for his own protection until long after the events here under review had occurred.

It was shown that Golden had negotiated a loan with a loan company in Memphis, with which to build a house on the lot sold to Huggins; and that the Eagle Lumber & Supply Company had furnished the material to Golden for the erection of that house; De Weese being unable to trace any of his money into the construction thereof, although he asserted that he thought he could do so, it was

conceded that he had no checks or drafts tending to establish this claim.

Huggins testified that Golden offered to reduce his payments from one hundred twenty-five dollars per month to one hundred dollars, on or before the date of the second trust deed in 1928, and that he executed the second trust deed in order to reduce the monthly payments.

The vice-president of the bank, who negotiated the loan, testified that he never saw the record of the trust deed in favor of Golden, trustee for A. De Weese, and said that Golden, in the negotiation of the loan, said to him that he had a deed of trust and note given by Dr. Huggins and his wife, and wanted to borrow money on it—the note was somewhere else, but he wanted to borrow on it; that the payment limit was too high, and he wanted to rearrange the notes and have new paper drawn. The vice-president did not see the old notes, the first ones, but was told that the first trust deed was in the hands of another bank as collateral for a loan, and, before he finally executed the loan to Golden, that bank notified him that its debt had been paid; and he had the bank's attorney prepare the papers for the loan to Golden, denying any knowledge of the fact that the first trust deed was to Golden, trustee for De Weese, but admitting that he knew the deed of trust and note were to be executed anew; in other words, they would recast the Huggins loan.

The bank's attorney testified that the money was not available for Golden's use until he (the attorney) advised the bank that in his opinion the title was good; that he did not personally look at the record, but that on the morning he pronounced the title good, the clerk read to him the cancellation by J. E. Golden, trustee for A. De Weese, over the telephone; and thereupon he advised the bank that the title was clear, and the loan to Golden was consummated.

It was sought to be shown by Wicks, one of the parties who sold the lots here in controversy, who was also the manager of the Eagle Lumber & Supply Company, that he had actual knowledge that De Weese had furnished the money with which to buy one of the lots. His testimony is to the effect that he did know that Golden drew drafts on De Weese, but thought that De Weese was simply acting as banker for Golden; and it is not contended that there is any other notice. He thought De Weese owed Golden, or he would not honor his drafts. On one occasion Golden told him that De Weese owed him for some services rendered. Wicks testified that he knew, at the time he took the transfer of the assignment owned by the bank, that De Weese was claiming this indebtedness, but denied that he had any knowledge prior to the notice personally communicated to him by De Weese, long after the transaction here involved had occurred.

There are many briefs in this case, but we shall consider the assignments of error in the order presented by the bank.

It is first contended that Golden had a right to cancel and satisfy the trust deed executed to Golden as trustee for A. De Weese; that said cancellation was valid and binding, and protected any one dealing with the property. This position is contested by the appellee, and it is insisted that Golden was not the proper party to cancel the deed of trust, that it could only be canceled by De Weese. The matter is settled by statute. Section 2153, Code of 1930, authorizes the trustee in a deed of trust to acknowledge satisfaction therefor in the same manner as a cestui que trust. Section 2155, Code of 1930, authorizes any mortgagee or cestui que trust, or the assignee of any mortgagee or cestui que trust, of real estate or personal estate, having received full payment of the money due by the mortgagee or deed of trust, to enter

satisfaction upon the margin of the record of the deed of trust.

In the case of Brown v. Yarbrough, 130 Miss. 715, 94 So. 887, this court held that though an assignee had only the naked legal title, he must satisfy the record of a deed of trust, and the mortgagee, though vested with full legal interest, is not authorized to cancel in such case. Also, see the case of Federal Land Bank v. Branscomb, 213 Ala. 567, 105 So. 585, and authorities there cited.

The legal title to this trust estate was in J. E. Golden, and therefore he was the proper party, under the statute, to cancel the deed of trust had the debt thereby secured been paid, and such cancellation was valid and binding as to all incumbrancers and purchasers without notice; but as to De Weese his act was a palpable fraud. There is no pretense that Huggins paid the debt. Under the guise of reducing payments by having the second trust deed executed by the debtors, the Huggins, he destroyed the trust which he had theretofore created. This record shows no right of revocation on behalf of Golden; and, notwithstanding the cancellation, the serious question in this case is whether or not the bank, and other parties, were notified constructively by the records of De Weese's claim, and whether they could rely upon this cancellation, or whether they were required to go further and investigate. The bank and its attorneys knew constructively that Golden was the trustee, was holding the legal title of this indebtedness for the use and benefit of A. De Weese; they likewise knew that the corpus of the same indebtedness had been incorporated in a new trust deed, and a new note in favor of the trustee for his benefit, as an individual; and that by this transaction De Weese was ignored and eliminated. Inquiry made of De Weese, who was shown by the record to own an equitable interest in the title, would have revealed to the bank, and to its attorney, that De Weese was being defrauded by this arrangement. They un-

fortunately did not make any investigation, although they had constructive notice that De Weese owned this debt and security. They took this security on the same day that the unfaithful trustee recast the debt, putting it in his own name, and recording the deed of trust fourteen days before he undertook to destroy the interest of De Weese, his cestui que trust; and thereby for himself rendered his deed of trust of greater value and of higher rank as a security—he could not secure a loan thereon from the bank so long as De Weese had paramount or superior title. The cancellation, together with the record facts, notified the bank and the lumber company to beware. We think they were called upon, with the facts before them, to inquire of De Weese as to his claim. The record of the first deed of trust pointed the way to security and safety.

In the case of Dead River Fishing & Hunting Club v. Stovall et al., 147 Miss. 385, 113 So. 336, this court held that a purchaser must examine previously recorded deeds of his grantor in any way affecting his title, and if in any of them there is a recital sufficient to put a reasonably prudent man on inquiry as to sufficiency of title, he is charged with notice of all these facts which could and would be disclosed by a diligent and careful investigation.

The authorities are quite convincing that the appellants' title, under its assignment of the second trust deed, was dependent upon the validity (as to them, and each of them) of the fraudulent cancellation by the trustee, who, although recognized by law as the proper party to enter a cancellation, when the debt has been paid, in fact in this case had no authority whatever so to do. The announcement quoted from the Fishing & Hunting Club Case is amply sustained by the authorities there cited.

However, appellants say that De Weese, by his actions, is now in equity estopped to claim his rights under the trust deed. True, at the time the bank was acting, De

Weese did not know in what manner Golden had secured to him that which belonged to him; that he said nothing, and appellants point out nothing, which militated against his claim to have enforced the trust which had been created in his favor. He said no word, and did nothing; but his silence cannot be availed of in this case; he was never asked to speak with reference to it. Lord Coke defines an equitable estoppel in this wise: "It is called an estoppel or conclusion because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth."

In this instance, the negligence of De Weese did not amount to any breach of trust on his part as to either the bank or the lumber company. He did nothing upon which the bank had a right to act, except to permit the trust deed operating in his favor to remain of record; and as soon as he discovered, as a fact, that it had been fraudulently canceled, he notified the parties affected thereby. There was no act of De Weese upon which the bank or the lumber company, or their attorneys, were entitled to rely. Of course, the facts and circumstances of each case of equitable estoppel must, of necessity, control the case. But all the negligence chargeable to De Weese was set aside when Huggins executed a deed of trust to Golden as his trustee, and named him as the real beneficiary therein set up. De Weese assumed no position, and made no representation upon which the parties who must suffer in this case could rely. The fact that he permitted Golden to take a deed to a lot in his wife's name, was cured when Golden had Huggins execute the first trust deed, and neither Golden nor Huggins could destroy the effect of that trust deed. When the second trust deed was executed, omitting the name of De Weese as the real beneficiary, all the parties thereto were charged with notice that in equity the name of De Weese should have been written therein.

The rule we are here applying is amply stated in

Griffith's Chancery Practice, page 48, sec. 47: "No person bound to act for another can act for himself. This is a principle as old as the first among laws, and it has an especially wide application in the processes and proceedings in chancery as a court of conscience. Under it, for instance, no next friend, no guardian, no guardian ad litem, and no commissioner of the court can purchase at any sale wherein there is being sold any property of his ward or of any of those for whom he has a duty to perform in the cause. The disability and disqualification imposed by the maxim runs through all the procedure and includes trustees, fiduciaries and in a large measure all those in confidential relations, so that no officer, agent or fiduciary shall be permitted in any respect to have any such connection or acquire any such interest as may come in conflict with those for whom in any substantial respect he is or may be required to act as to any portion of the matter."

For cases specially in point, see Joor v. Williams, 38 Miss. 546; Brockett v. Richardson, 61 Miss. 766; Parker v. Foy, 43 Miss. 260, 5 Am. Rep. 484; and especially Bank of Hickory v. McPherson, 102 Miss. 852, 59 So. 934, wherein the bank was held liable upon the handling of a check which showed that the payee thereof was acting in a fiduciary capacity.

The record advised the appellants in the present case that Golden, the fiduciary, was destroying the security of his cestui que trust, thereby enhancing the value of his own security. The cancellation of the trust deed was in itself sufficient to put them upon inquiry, and the bank and its attorney actually knew the form of the cancellation, and that Golden was not canceling a paper belonging to him, but the paper of his cestui que trust. They knew the effect of that cancellation; the way to the truth was pointed out. They did not avail themselves of it.

It is next insisted that the testimony of De Weese shows

that at most he only had an interest of two thousand five hundred dollars in the security; and to sustain this contention, certain evidence in the record, which we have examined, is pointed out. If it be conceded that the evidence referred to establishes an agreement between Golden and De Weese, still the point is unavailing here, for the reason that the attorney for the lumber company objected to this particular testimony, which objection was sustained by the court; and, therefore, the evidence, being excluded, is not before this court.

As to objection to the form of the decree, we think it is in conformity with this opinion.

It is urged by counsel for appellants that by virtue of section 2681, Code of 1930, both the bank and the lumber company are purchasers for value to the extent of this pledge in good faith, and therefore are entitled to the proceeds of the securities. We fail to see the application of this section to the state of case here involved. We have held that they are purchasers with notice of the defect, as shown by the record of these securities. Moreover, Huggins, the maker of the note and security, is not here seeking to interpose any defense; this is a contest between the owner of paper wrongfully wrested from him through the artifice of a recreant trustee, and the purchaser of his property; and although neither the bank nor the lumber company are chargeable with his fraud, the record conveyed to them such constructive notice thereof that they cannot now be shielded by this section of the Negotiable Instruments Law. On all these matters we are unable to find any error in the decree of the chancellor.

Affirmed.