KELSO *et al. v.* ROBINSON.

(Division B. April 22, 1935. Suggestion of Error Overruled June 10, 1935.)

[161 So. 135. No. 31644.]

H. C. Mounger, of Greenwood, for appellants.

Sylvanus **W. Polk**, of Memphis, Tenn., for appellants.

**Arthar Bruce,** of Greenwood, for appellants.

832

**Allen & Allen** and **Moody & Johnson**, all of Indianola, for appellee.

Argued orally by **Arthar Bruce** and **H. C. Mounger, Jr.,** and **Sylvanus W. Polk,** for appellant, and by **B. B. Allen,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee filed his bill against appellants in the chancery court of Sunflower county to cancel and set aside a conveyance to the Metropolitan Life Insurance Company to a section of land described in the bill, which conveyance was a trustee's deed made by appellant Kelso in his capacity as substituted trustee in a mortgage executed by Augustus Robinson, Sr., and wife, resulting from foreclosure in pais of such mortgage by the trustee. The life insurance company answered, and made its answer a cross-bill, denying the material allegations of the original bill, and, in addition, setting up certain facts as constituting an estoppel of appellee to question the legality of the conveyance. The material allegations of the cross-bill were denied by appellee. There were amendments to the pleadings on both sides unnecessary to mention. The result of the trial was a decree sustaining the prayer of the appellee's bill. From that decree the life insurance company and the trustee prosecute this appeal.

For the purposes of this decision, it will be assumed that every fact material to appellee's case was proven. So viewing the case, it was as follows: Augustus Robinson, Sr., is the father of the appellee, Augustus Robinson, Jr. In signing his name the father did not use the

annex "Sr."; however, the son, in signing his, used the annex "Jr." On the 1st of March, 1921, Augustus Robinson, Sr., borrowed twenty thousand dollars from the Maxwell Investment Company, for the payment of which he and his wife executed a note, and mortgage to secure the same, on the section of land involved. The note was due ten years thereafter—the 1st of March, 1931. During the ten years payments were made on the note. On the 5th of December, 1924, the father and mother executed a conveyance to the son, Augustus Robinson, Jr.; the consideration mentioned in the deed was "$50.00 and other valuable considerations, the receipt of which is hereby acknowledged." Under this conveyance appellee went into possession and farmed the land until the early part of the year 1932. After the conveyance to appellee, the payments on the mortgage indebtedness, up to the time of foreclosure, were made by him. The life insurance company knew of this conveyance, and had been informed that a part of the consideration was the assumption by appellee of the mortgage indebtedness. The payments on the indebtedness being far in arrears, on the 7th of March, 1932, the mortgage was foreclosed by advertisement and sale by Kelso, the substituted trustee. At the sale the life insurance company bought the property for less than the mortgage indebtedness and received a deed thereto from the trustee. In the advertisement of the sale appellee was not named as a mortgagor; Augustus Robinson, Sr., and his wife alone were named as such.

This last-named fact is one of the grounds of attack on the conveyance by the trustee. To sustain that contention appellee relied on Wilkinson v. Federal Land Bank, 168 Miss. 645, 150 So. 218, 151 So. 761, and Castleman v. Canal Bank & Trust Co. (Miss.), 156 So. 648. Another ground of attack was that appellee had an agreement with the life insurance company that foreclosure should not

take place before the 1st of March, 1932; that although the actual foreclosure did not take place until the 7th of March, 1932, still the agreement was violated because the advertisement of the sale had begun some time before the 1st of March, and that that fact constituted a breach of the agreement.

The life insurance company contends that appellee was estopped to take advantage of either of those grounds of attack on the conveyance because of the following facts, which were undisputed in the evidence: Appellee had actual knowledge of the advertisement of the proposed foreclosure; the night before he and Kelso, the substituted trustee, occupied the same room at a hotel. When the sale took place the next day, appellee was present and made no objection. He raised no question as to its legality. After receiving the trustee's conveyance, the life insurance company immediately took possession of the land, and through negotiations with appellee and one Hazzard leased the entire place to Hazzard for the year 1932, and Hazzard subleased two hundred seventy-five acres of it to appellee, and in pursuance thereof each of them farmed his respective share of the place for 1932. For the year 1933 appellee alone leased the entire plantation and farmed it. There were something like twenty tenant houses on the place and barns and other buildings, all of which were badly in need of repair. During 1932 and 1933 the life insurance company, not only with the knowledge but without objection on the part of appellee, made extensive, necessary, and valuable repairs on the tenant houses and other buildings on the place. According to the evidence for the life insurance company, these repairs cost three thousand seven hundred seventy-one dollars and ninety-one cents. The chancellor found that their actual value was two thousand dollars. At no time during 1932 and 1933 did appellee give the life insurance company notice

that he claimed title to the land on the ground that the foreclosure sale was void for the reasons upon which his bill was founded. At the end of his 1933 lease year appellee surrendered possession to the life insurance company and brought this suit. In other words, at the time the suit was brought, he was not a tenant; therefore he was not estopped under the law by the well-established doctrine that a tenant cannot dispute his landlord's title.

The question is whether his conduct at the foreclosure sale and the knowledge he had then and his silence at that time as to any illegality in the sale, in connection with the further facts that he leased part of the place for 1932 as a subtenant, and all of it for 1933 as primary tenant, during which time the life insurance company made the permanent and valuable improvements referred to, with his knowledge and tacit consent, and his failure at any time during those two years to give the insurance company notice that he claimed the foreclosure was illegal and as a result the land belonged to him, constitutes an equitable estoppel. We think it does. Although his former tenancy did not estop appellee, it is a very strong circumstance to be considered with the others in the case going to make up an equitable estoppel. His tenancy, while existing, was an express acknowledgment that he was not the owner of the land, but that his landlord, the life insurance company, was; it meant nothing less than that.

Estoppel may arise from misleading silence or passive conduct joined with a duty to speak. The doctrine lies at the foundation of morals; it is based on equity and good conscience. Under its application fraud is suppressed; honest and fair dealing is promoted. One of the merits of equitable estoppel is that it reaches the ends of justice by a direct route, and one of the established rules of the doctrine is that, if a person knowingly suffers another to expend money on land under an

erroneous opinion of title, although he does it passively by looking on without making known his claim, he shall not afterwards be permitted to enforce his legal right against such other. While the life insurance company was making the improvements on the place, appellee, by virtue of his tenancy, was saying to it every day during such tenancy: This is your place, not mine, go ahead and make the improvements. This fact, taken in connection with appellee's silence before and at the foreclosure sale as to his claim of title, bars any right he has. After keeping his mouth closed as to his claim during all that period, in connection with the fact of the improvements made by the life insurance company on the faith that it had a good title, appellee will not now be permitted to speak. Bigelow on Estoppel (6 Ed.), p. 492; 10 R. C. L., sec. 97, pp. 782, 783; 11 Cyc. of Law (2 Ed.), p. 431; Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618, 619; Staton v. Bryant, 55 Miss. 261; Kelly v. Skates, 117 Miss. 886, 78 So. 945; Eagle Lumber & Supply Co. v. De Weese, 163 Miss. 602, 135 So. 490.

We pretermit the question whether appellee was a mortgagor and entitled to be named in the foreclosure notice. The other question disposes of that one; it is unnecessary, therefore, to decide it.

Reversed, and bill dismissed.