QUIN *v.* NORTHSIDE BAPTIST CHURCH

No. 40733 September 22, 1958 105 So. 2d 151

*Brunini, Everett, Grantham & Quin,* Jackson, for appellant.

*Gordon & Kendall,* Jackson, for appellees.

54

ROBERDS, P. J.

The original bill was filed in this cause by Mr. J. M. Quin August 20, 1956. He filed an amended bill November 1, 1956. Later the same day Mr. Quin died of a heart attack. He left a will in which Mrs. Quin was the sole beneficiary. November 29, 1956, the cause was revived in the name of Mrs. Quin. On December 31, 1956, Mrs. Quin, as complainant, filed herein a second amended bill.

Mr. and Mrs. Quin, during his lifetime, and Mrs. Quin after his death, owned and occupied a residence in the City of Jackson which fronted westwardly on the east

side of North State Street some ninety-five feet and extended eastwardly approximately three hundred and fifty-six feet. North State Street and the Old Canton Road, at the location of the Quin property, both ran generally north and south, the Canton Road being some seven hundred and sixty feet east of North State Street. The bills herein alleged that starting at, or near, the southeast corner of the Quin property was "a public road" which extended to the west side of the Old Canton Road; that the Quins, as members of the public, had the right to use the road extending to the Old Canton Road and had the right to have it kept open for that purpose; that the appellee Church had bought the property lying east of the Quin property and which extended to the west boundary of the Canton Road and had obliterated the public road theretofore extending from the Old Canton Road to the southeast corner of the Quin property, and thereby had wrongfully deprived the Quins, as members of the public, of the use of said road connecting the Quin property with the Canton Road.

The bills prayed, in effect, for an injunction restraining the Church from obstructing complainant's right of ingress and egress, and his travel over, said public way from the Old Canton Road to the rear of the lot owned and occupied by the Quins.

The answer of the Church denied that the way in question was a public street or road and denied the Quins had any vested right to use said street as a public highway. And, by way of affirmative plea, the answer averred that the Quins had stood by for many years, knowing the Church was excavating and leveling the property over which the alleged way existed, and constructing a church thereon, all to the approximate cost of four hundred and fifty thousand ($450,000) dollars, without any protest whatever, and without disclosing they claimed any right therein, and that thereby complainants were estopped in equity from now asserting any right in the so-called street or road.

The chancellor found and adjudicated that the way in question was not a public way, or road, or street, and that the complainants had no vested right to travel it, and also that the Quins were estopped in equity to the use of the said way if such right ever existed. From a decree so adjudicating Mrs. Quin appeals here.

The question is whether we shall reverse the chancellor. That depends on whether he had substantial evidence to support his findings and conclusions.

On the question of public or private road, the following facts are fairly deducible from the testimony: Whatever passageway existed extended from the southeast corner of the Quin property eastwardly to the Old Canton Road. None of it was on the Quin property. They had no title to the way. The only right of the Quins in the passageway was simply as members of the public.

 █ Mr. Quin first bought his property July 13, 1930; he sold it to Hearn in 1931 and repurchased it the same year. To the rear of the Quin property and near or along the alleged way in question there existed from time to time a number of houses, ranging from one to five or six. The bill states there were four such houses in 1920. These were occupied by owners and tenants. Most of the occupants of the houses were members of the colored race. The way in question was used, at least to some extent, as ingress and egress to and from these houses, by the occupants thereof and those who might visit them for personal or business reasons. That was the situation many years ago. However, later as the years passed, the houses became vacant, were torn down, and gradually disappeared. Only one house was left— that of Janie Black. In 1944, she sold her house and lot to Mr. R. G. Caldwell. Mr. Caldwell's house was north of the road in question and he used another way in reaching his home from the Old Canton Road. This other way, it appears, was prepared by the Church and Caldwell— mainly by the Church. The Caldwell house was torn

down in 1948. The main use made of the way by Mrs. Quin was to go to see her servant who occupied one of the houses. Mr. Quin first had his heart attack in 1947. Thereafter he was confined largely to the premises of his home. The use he made of this so-called street or road was to walk along or across it as he went to a nearby drink stand to engage in a social drink of coffee with some friend. Henry Allen, a white man and a long-time resident of the vicinity, testified that the passageway was used by "those negroes that lived back in there" and that "they just walked back and forth through there." Miss Marion Fondren, who resided in the vicinity of the passageway for many years, gave this testimony: "Q. What use was made of that alley? Who used it actually? A. Just those people who lived there on it. Q. Just the negroes who lived there and the visitors to their homes? A. Un-hun. Q. Anyone else? A. Not that I know of."

As heretofore stated, the alleged passageway, such as it was, did not connect any roads or streets or passageways. It ended some three hundred and fifty-six feet east of North State Street. It was a cul de sac.

The property in question was incorporated into the City of Jackson, Mississippi, in 1925. Neither Hinds County nor the City of Jackson ever spent a penny in the upkeep or maintenance of the alleged passageway. Such work as was done upon the road was done by those who resided along and near it. The testimony is that they, from time to time, filled up some holes in the road.

The alleged road or street never appeared upon any map or plat or public record of Hinds County or the Municipality of Jackson. There has been no attempt by the landowner to dedicate a public highway, nor by the county or city to accept or create one. Neither the county nor the city ever exercised any jurisdiction whatever over this passageway.

Perhaps the Mississippi case nearest in point under the facts of this case is Stuart, et al. v. Town of Morton, 200

Miss. 160, 26 So. 2d 246. That case involved the question whether an alleyway which ran back of a number of stores was a public way. The Chancellor found that "* * * the testimony abundantly proves that after the building of the new store the alley was opened and kept open and was continuously used from 1898 to the time of the institution of this suit (1945) by the merchants whose stores abutted said alley and by their customers." This Court said in the opinion: "There was no substantial testimony that the said alley was used by the public generally as a thoroughfare. At any rate, we are unable to say that the finding of the Chancellor is manifestly wrong to the effect that the alley was opened and used primarily and almost entirely by the merchants whose property abutted thereon and by their store customers in loading and unloading merchandise at the rear of their stores." The lower court and this Court held this to be a private, not a public, alley, except as to electricial, water and sewerage lines not involved in the case at bar.

On the question of the necessity of acceptance by the public authorities, either by user or some other recognized legal method, see Armstrong, et al. v. Itawamba County, 195 Miss. 802, 16 So. 2d 752, and Albright, et al. v. Baker, 213 Miss. 234 56 So. 2d 703.

It is clearly evident that the passageway involved in this case was not a public highway.

The chancellor further held that the Quins were estopped in equity to claim an easement, or right of user, in the alleged passageway. That was based upon these facts deducible from the testimony:

The Church acquired title to the land between that owned by Mr. Quin and the Old Canton Road in three purchases: one in 1942, one in 1947, and the other in 1949. Within a reasonably short time after the first purchase, the Church began to grade down and level off the lot preparatory to erecting a church thereon. This part was first graveled, then blacktopped. The construction

of the church building itself started in 1947; it proceeded to completion and later an annex was erected. The total cost of preparing the grounds and the erection of the church building and the annex amounted to $450,000. Mr. Quin was on the scene a number of times. He knew what was being done and the effect on the so-called street. He discussed with members of the building committee of the Church the plans for erection. . He never made known to the Church that he claimed any easement or right to use a passageway which was being destroyed and obliterated by the work involved in erection of the Church and the annex and the grading and leveling of the gorunds. His residence adjoined the grounds the Church had purchased and on which the Church and annex were being constructed and the grading work was being done. On April 24, 1956, Mr. Quin, through an attorney, wrote the Church a letter, asserting his right to use what he called a ''street'' over and across the Church property from the Old Canton Road to his home west of the Church lot. Thus, the first notice the Church had that Mr. Quin claimed a right to cross the property the Church had purchased and which it had thus graded and paved and on which it had constructed the Church and annex was some fourteen years after the Church first acquired its property; some eleven years after the so-called street had been destroyed and obliterated; some nine years after the Church commenced construction of its original building.

This Court, in Brock v. Kelly, et al., 208 Miss. 323, 44 So. 2d 452, quoted the rule applicable to the facts of this case as set out in 19 Am. Jur., p. 787, Section 133, in these words: ''* * * it is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which call for notice or protest cannot afterwards assert his own title against such person.'' This Court also, in Kelso, et al. v. Robinson,

172 Miss. 828, 161 So. 135, stated the equitable rule applicable here as follows: "* * * if a person knowingly suffers another to expend money on land under an erroneous opinion of title, although he does it passively by looking on without making known his claim, he shall not afterwards be permitted to enforce his legal right against such other." The same principles were announced in the recent case of Howie, et al. v. Baker, 232 Miss. 661, 100 So. 2d 113. The foregoing principles, under the facts of this case, as found by the chancellor, require a dismissal of the original and amended bills in this cause.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.