BOWLING, Justice,
for the Court:
This appeal from the Chancery Court of Newton County involves a sale and purchase of timber. The appeal questions evolve around the securing of a timber deed and the purchase of timber without securing deeds from all the owners. As usual a consideration of the appeal requires a brief discussion of the facts. These are largely undisputed, except for the amount of timber and its value. In relating the facts it usually is well to begin at the beginning.
One Clifton Gardner in 1942 purchased 100 acres of land approximately seven miles north of Decatur in Newton County. Gardner died intestate in 1952 leaving as his surviving heirs his wife Irene and seven children.
After Gardner’s death and prior to the proceeding involved in this case, small tracts of the property had been deeded to some of the heirs for home places, leaving 93V2 acres involved in this cause.
Gardner’s widow, Irene Gardner, was 74 years of age at the time of the occurrences leading to this litigation. She lived in the home place, by the side of the country road, which house was on the subject property and the home in which Mrs. Gardner reared and provided for her seven children. In February 1978 and for some years prior thereto, appellee Walter Gardner, one of the sons, lived in a house just across the road from his mother. On and before said date, one of the daughters, Valean Welch lived in a house next door to her mother. For a period of time prior to February 1978, two men, namely Murray H. Gibson and Jimmy Adams, had been negotiating with Irene Gardner to purchase the saw-log timber from the place. This timber covered from 65 to 70 acres of the total acreage.
On February 6, 1978, Gibson and Adams secured from Irene Gardner a deed to the timber. The deed, typed by the two purchasers, did not have a place for an acknowledgment. Irene Gardner called her daughter Valean and requested that she come and witness the deed. Valean did so, after which the deed was taken across the street to be witnessed by the wife of Walter Gardner. The latter was away from home several days on business.
The instrument secured by Gardner and Adams was then taken to the duly authorized officials of appellant, Scotch Plywood Company of Mississippi. This company bought the timber from Gibson and Adams by warranty deed dated February 15, 1978. Gibson and Adams had paid Irene Gardner $16,000 for the deed from her. Appellant paid Gibson and Adams the sum of $27,000.
The daughter Valean Welch testified regarding her knowledge of the instrument executed by her mother and admitted that she knew the instrument purported to convey all the timber on the Gardner tract for $16,000. She witnessed her mother receiving $8,000 in cash, and a check for $8,000 in *847 consideration of the timber conveyance. She lived in the same house during the entire time from the execution of the conveyance until the timber was cut.
Walter Gardner, an educated man engaged in the insurance business, stated he was away from home the day his mother executed the timber instrument, but learned of it upon his return. He did nothing. He testified that during the weeks appellant was cutting the timber, the vehicles had to use his driveway. He discussed this situation with appellant’s employees, and was assured that damages to the property around his home would be repaired. Gardner, in effect, witnessed the cutting of the entire tract of timber by appellant and took no action to stop it or in any way interfere with its being cut. He further testified that prior to filing the litigation now before us, that the money received by his mother from the sale of the timber was used to renovate her house.
Both appellees and appellant presented an expert in cruising timber. Appellees employed a graduate forester to examine the stumpage left by the timber cutting and he gave a professional estimate as to the amount cut and its value. Appellant introduced one of its full-time employees, who was a junior college graduate and had received on the job training as a timber cruiser. He testified as to his examination of the timber prior to it being purchased by his company. Needless to say, as usually happens when experts testify for different parties, the amounts and prices in this case varied substantially between the two experts.
On December 20, 1980, the seven children of Clifton and Irene Gardner, by Walter Gardner, filed suit in the Chancery Court of Newton County naming as defendants the appellant Scotch Plywood Company of Mississippi and the two individuals, Murray Gibson and Jimmy Adams. The suit was in an effort to recover the value of the childrens’ interest in the timber. All three defendants appeared by solicitors and filed pleadings. Appellant, Scotch filed a cross bill against fellow defendants Gibson and Adams requesting that in the event a decree was rendered against the company, that it should be entitled to a decree against the two individuals under the terms of the warranty deed given by them to the company.
After a hearing of several days and a consideration of the case, the chancellor found that the seven appellees were entitled to recover the value of their interest in the timber that was cut as of the date of the purchase by appellant. We shall not discuss how he arrived at his final amount, but we are required to consider, and we now hold, that appellees presented sufficient proof for the chancellor to arrive at his value for the timber. He found that the value at the time of cutting was $67,-780.32. This was a total value, including that of Irene Gardner, the mother. The chancellor then reduced the total value by one/eighth and rendered a decree for Vs of the total value to appellees. This decree was in the sum of $59,307.78. The chancellor directed that this amount be deposited with the clerk of the court by appellant Scotch Plywood for distribution.
The individual defendants Gibson and Adams do not appear in this appeal.
Appellant Scotch presented a number of assignments of error. After careful study, we are of the opinion that only one assignment, other than the cross-claim, applies and that the remainder have no merit. This applicable assignment of. error is that the chancellor erred in finding that appel-lees are not equitably estopped from recovering any amount from appellant.
The five children of Clifton and Irene Gardner, other than Valean Welch and Walter Gardner, lived and had been living for a number of years in New York and Wisconsin. They did not appear personally and testify at trial. As hereinbefore stated, the bill of complaint was signed by appellee, Walter Gardner. There is no testimony in the record which would authorize this court to hold that the five non-resident children committed any acts that would justify holding that they were equitably estopped from receiving their interest in *848 the timber. There are only vague references to telephone conversations.
We cannot say the same about daughter Valean or son Walter. The proof is clear that each knew their mother had conveyed the entire timber to Gibson and Adams, who in turn conveyed to appellant Scotch. As hereinbefore related daughter Valean witnessed the instrument and knew that it conveyed all the timber. Son Walter knew that all the timber was being hauled over his driveway. They did nothing, although it was approximately one and one half years before the timber was finally cut. Taking the entire evidence into consideration, we are of the opinion that the chancellor erred in failing to hold that children Valean Welch and Walter Gardner, were estopped to secure a judgment against appellant.
Long ago the question of estoppel was discussed in the case of Nixon’s Heirs v. Carco’s Heirs, 28 Miss. 414 (1854), where the court said:
[I]f one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by the equitable estoppel.
In the case of Martin v. Franklin, 245 So.2d 602, (Miss.1972), we said the following:
With full knowledge of his own title to the land in dispute, Martin stood by and saw the survey being made of the Franklin lot and later the construction by Franklin of a home thereon. Franklin acted in good faith believing he had title. Martin was under a duty to make known to Franklin the true state of the title when Franklin began making improvements on the lot. He stood by until the house was completed and then made claim to it. In Quin v. Northside Baptist Church, 234 Miss. 51, 105 So.2d 151 (1958), this Court said, in quoting from an earlier case, that it is a rule of almost universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which call for notice or protest cannot afterwards assert his own title against such person.
The Court, through Justice Robertson, discussed the principle of equitable estop-pel in the recent case of PMZ Oil Co. v. Lucroy, 449 So.2d 201 (Miss.1984). This principle of law was discussed fully with applicable citations set out therein.
We find that we cannot say with any reasonable degree of certainty that the chancellor was manifestly wrong in his findings as to the amount of timber cut and the value thereof. The evidence simply made out a question of fact for the chancellor’s decision.
We do, however, find error in the chancellor’s opinion that daughter Valean Welch and son Walter Gardner are not equitably estopped from claiming their shares of the timber for the reasons herein-before set out. We cannot disturb the finding of no estoppel to the five non-resident children. There is not sufficient evidence to place that burden upon them.
The lower court in its decree ordered the funds representing the value of the timber to be paid into the registry of the chancery clerk’s office in Newton County to be distributed. We do likewise, first holding that the five non-resident complainants are entitled to the total sum of $42,362.70. The record is clear that expenses have been incurred in the presentation of this case to final decree and this appeal. For instance, we may take judicial notice that experts do not work for nothing and that the forester who testified for appellees is entitled to compensation. We also recognize that the two children living adjacent to the land in question incurred expenses in investigation, filing and prosecuting the case for and on behalf of the five non-resident children.
*849 We therefore direct that appellant pay into the registry of the Chancery Clerk of Newton County the sum of $42,362.70. In the event the appellees cannot submit an agreed decree on the distribution of these funds, the chancellor is directed to conduct a hearing for that purpose and to decree the proper distribution.
The cost of all proceedings are assessed one-half to appellant and one-half to appel-lees.
AFFIRMED IN PART, REVERSED IN PART, RENDERED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.