913 So.2d 387 (2005)
Dennis NICHOLS, Appellant/Cross-Appellee,
v.
Fred M. BUSH, Jr., James G. Young, Julia Young, Christopher A. Loden and Joy Y. Loden, Appellees/Cross-Appellants.
No. 2003-CA-00816-COA.
Court of Appeals of Mississippi.
April 19, 2005.
*388 Tommy Dexter Cadle and Kenneth Eugene Floyd, Booneville, attorneys for appellant.
Richard Shane McLaughlin and J. Max Edwards, Tupelo, attorneys for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. A foreclosure sale was conducted on October 11, 2001, on property that was secured by a note and deed of trust executed by Dennis and Teresa Nichols. Nichols later filed suit, and the chancellor set aside the foreclosure sale. After setting the foreclosure sale aside, the chancellor determined that the amount necessary to bring the note and deed of trust current was $64,466.47, and the amount necessary to satisfy the debt was $81,440.15. Nichols appeals, contending that the chancellor erred in his determination of the amount necessary to bring the note current and satisfy the note. The appellees cross-appeal, arguing that the chancellor erred in setting aside the foreclosure sale.
¶ 2. We find that the chancellor was in error in setting aside the foreclosure sale and reverse and render that decision.

FACTS
¶ 3. Dennis Nichols and his wife, Donna Nichols, executed a land deed of trust and promissory note on October 31, 1994, in the amount of $70,000 securing real property located in Itawamba County, Mississippi. James G. Young was the original secured party and later he substituted Fred M. Bush, Jr., as trustee, as authorized by the deed of trust and note. The original note called for an annual payment of $7,000 for ten years plus interest.
¶ 4. Nichols defaulted under the deed of trust on numerous occasions, resulting in the substitute trustee initiating foreclosure proceedings. In 1996, Nichols prevented the foreclosure sale by verbally agreeing to a monthly amortization schedule on the property. At the time, he had not paid the first two payments under the note and could not come up with the money to pay off the foreclosure. Nichols agreed to bring the note current with interest and to begin making monthly payments.
¶ 5. Nichols defaulted on the note several times after agreeing to make monthly payments, and separate foreclosure sales were scheduled for February 10, 2000, July 20, 2000, September 14, 2000, and May 3, 2001. On each occasion that a foreclosure was scheduled during 2000, Nichols avoided foreclosure by contacting Young's attorneys and making payment in *389 the amount necessary to bring the note current. However, prior to the foreclosure sale scheduled for May 2001, Nichols filed for Chapter 13 bankruptcy on the morning of the foreclosure sale.
¶ 6. Because of the automatic stay pursuant to the bankruptcy filing, the foreclosure sale was suspended for May 3, 2001. Young then filed a motion to lift the automatic stay in the bankruptcy court, seeking court approval to go forward with the foreclosure sale. At the hearing held in the bankruptcy court on June 12, 2001, the bankruptcy court ordered Nichols to make "regular monthly payments directly to [Young] in the amount of $1,025.52 under the subject Land Deed of Trust beginning July 1. 2001." The bankruptcy court also ordered Nichols to provide proof of payment of property taxed for 2000, and proof of insurance coverage.
¶ 7. Nichols failed to make payments as required by the bankruptcy court, and the bankruptcy court entered an order lifting the automatic stay and authorizing the foreclosure sale to go forward. Because Nichols also failed to insure the property as required and failed to appear for any creditors' meetings, the bankruptcy trustee sought to have the bankruptcy proceedings dismissed. The bankruptcy was later voluntarily dismissed. It was after these events that the substitute trustee again published full notice of the foreclosure sale to be held on October 11, 2001. It is this foreclosure sale which is the subject of this appeal.
¶ 8. On the day prior to the foreclosure sale, October 10, 2001, Nichols' attorney contacted Young's attorney and requested the payoff figures for the arrearage on the note and the underlying balance. According to Nichols' attorney, he was told that the amount necessary to bring the note current was $29,000 plus and the amount necessary to satisfy the note and deed of trust was $60,000. There are conflicting affidavits from the attorneys as to whether Nichols' attorney also requested a breakdown of the numbers due to "glaring defects." According to Nichols' attorney, he never received the requested accounting. Young's attorney contends that there was nothing else to explain or provide the other attorney and that there was no request for an accounting.
¶ 9. The foreclosure sale was held at the Itawamba County Courthouse on October 11, 2001, at eleven o'clock a.m. The sale was conducted by Scott Ellzey, one of Young's attorneys, as agent for the substitute trustee, Fred M. Bush, Jr. Sam Brown was present at the sale and stated to Ellzey that he was participating in the sale for Nichols.
¶ 10. The trial court in its judgment found that Brown "was bidding on behalf of Dennis Nichols," and Nichols in his complaint stated that "a bid was submitted on [his] behalf" at the foreclosure. Brown later denied that he was participating in the sale as an agent of Nichols.
¶ 11. At the foreclosure sale, Brown made progressive bids on the property up to $83,000, but was unsuccessful in securing the highest bid as Young's agent eventually submitted the highest bid of $83,500. A substitute trustee's deed for the property was obtained by Young and recorded in the land records of Itawamba County. Young subsequently conveyed the property via warranty deed to himself and Christopher and Joy Loden.
¶ 12. Nichols then refused to vacate the property after the foreclosure sale, requiring Young and the Lodens to file an unlawful entry and detainer action in justice court. The justice court directed Nichols to vacate the property within five days and to pay damages of $250. Nichols' appeal *390 from justice court was later consolidated with the present litigation.
¶ 13. Because the trial court found that the foreclosure should be set aside but without specifically stating why, the evidence presented at the trial court was limited to the amount necessary to satisfy the note and extinguish the deed of trust on the date of the foreclosure. The court found that the amount necessary for Nichols to bring the note current as of July 1, 2002, was $64,466.67 and the amount necessary to satisfy the note and release the deed of trust was $81,440.15. Young's attorney agreed that the amount of the arrearage on the note was $64,466.67, but argued that the total amount necessary to pay the note and satisfy the deed of trust was $99,031.72. Nichols takes the position that the amount necessary to bring the note and deed of trust current was $13,286.10, and the amount necessary to satisfy the note and deed of trust was $45,679.04. The differences are in the amount of attorney's fees and publication costs which are assessed to the Nichols.
¶ 14. Nichols filed his complaint to contest the foreclosure on November 19, 2001. The order of the chancellor was entered on August 23, 2002. The notice of appeal was filed on February 6, 2003, from the denial of the motion to reconsider rendered on January 9, 2003.

DISCUSSION
¶ 15. Nichols argues that the note was not in default at the time of the foreclosure sale. He contends that the foreclosure could only have been conducted after October 21, which was the original annual payment date. To reach this conclusion, the Court would have to ignore both the facts of this case and the case law.
¶ 16. As a result of an agreement, the payment schedule was made monthly, rather than annually as in the original note. The bankruptcy court ordered monthly payments as part of the bankruptcy plan and lifted the stay when Nichols failed to make the monthly payments. As a result of this change in position, the seller had reason to believe that monthly payments would be forthcoming, although Nichols refused to sign a new note. Nichols' contention that the note was current at the time of the foreclosure sale is directly contradicted by his actions in seeking the payoff information and in having a representative present at the foreclosure sale.
¶ 17. At no time prior to the foreclosure sale can we find that the argument  that the note was current or the sale premature  was presented by Nichols either to Young, his attorney, the trustee or the party conducting the foreclosure sale or to the chancery court in order to halt the sale. Nichols admits that he sought to find out the amount to bring the account current, although he disputes the amount he was told. Nichols also freely states that his representative was present at the foreclosure sale and bidding for the property. Regardless of the nature of the legal relationship of this person to Nichols, neither he nor Nichols ever raised any objection to the foreclosure sale prior to, during, or immediately after the sale. It is difficult or impossible to see why Nichols would then be entitled to relief from the chancery court under these circumstances.
¶ 18. Under our review, we must determine whether the chancery court committed error or abused its discretion. Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss.1992). We will reverse a chancellor's findings only if the actions were manifestly wrong, clearly erroneous, or the chancellor applied an erroneous legal standard. Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994). In this case, we conclude that the chancellor was in error.
¶ 19. In Chambers v. BankcorpSouth, 822 So.2d 1113, 1115(¶ 9) (Miss.Ct.App. *391 2002), this Court stated that the failure to object when given notice, or remaining silent during the foreclosure sale, estopps a party from subsequently challenging the title of the purchaser. Under that case, "it has been established that a mortgagor who has actual notice of a foreclosure sale and fails to object to the sale is estopped from subsequently challenging the title of the purchaser." Id. at (¶ 9), citing Kelso v. Robinson, 172 Miss. 828, 161 So. 135 (1935).
¶ 20. In Kelso, the court stated:
Estoppel may arise from misleading silence or passive conduct joined with a duty to speak. The doctrine lies at the foundation of morals: it is based on equity and good conscience. Under its application fraud is suppressed; honest and fair dealing is promoted. One of the merits of equitable estoppel is that it reaches the ends of justice by a direct route, and one of the established rules of the doctrine is that, if a person knowingly suffers another to expend money on land under an erroneous opinion of title, although he does it passively by looking on without making known his claim, he shall not afterwards be permitted to enforce his legal right against such other.
Id. at 137.
¶ 21. In Hamilton v. Federal Land Bank, 184 Miss. 878, 878, 186 So. 832, 833 (1939), the court stated that "the general rule is that any person who is present and fails to object to the manner in which the sale is made cannot subsequently have the sale set aside on the ground that it should have been conducted in a different manner." See also Baker v. Connecticut General Life Ins. Co., 196 Miss. 701, 18 So.2d 438, 440 (1944).
¶ 22. There is no question that Nichols was fully aware that the foreclosure sale was to take place. Notice is not an issue. It is also clear that he had the opportunity to make objection to the sale, both as to the timing and manner and to the proposed payoff of the debt. Although Nichols states that he, through his attorney, asked for an accounting, no specific objection appears to have been made. Nichols admits that he had a representative present at the foreclosure sale and bidding. Under case law, by his silence, Nichols waived any irregularity in the sale and is estopped from seeking to have the foreclosure set aside. The judgment setting aside the foreclosure sale is reversed and rendered. The remaining issues raised will not be addressed by this Court.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF ITAWAMBA COUNTY IS REVERSED AND RENDERED ON DIRECT APPEAL AND THE FORECLOSURE SALE IS REINSTATED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, AND ISHEE, JJ., CONCUR. GRIFFIS, AND BARNES, JJ. NOT PARTICIPATING.