# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01118-COA

**BENNIE E. HARRIS**                                                                 **APPELLANT**

**v.**

**AURORA LOAN SERVICES, A WHOLLY**                               **APPELLEES**
**OWNED SUBSIDIARY OF NATIONSTAR**
**MORTGAGE, LLC, NATIONSTAR MORTGAGE,**
**LLC, A WHOLLY OWNED SUBSIDIARY OF**
**NATIONSTAR MORTGAGE HOLDINGS, INC.**
**D/B/A MR. COOPER, NS193, LLC, MORTGAGE**
**ELECTRONIC REGISTRATION SYSTEM, INC.,**
**A WHOLLY OWNED SUBSIDIARY OF**
**MERSCORP HOLDINGS D/B/A ICE**
**MORTGAGE TECHNOLOGY, McCALLA**
**RAYMER LEIBERT PIERCE, LLC AND**
**STATEBRIDGE COMPANY, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/2024 |
| TRIAL JUDGE: | HON. D. NEIL HARRIS SR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEWIE G. "SKIP" NEGROTTO IV |
| ATTORNEYS FOR APPELLEES: | ARNOLD D. LEE |
| | STEVEN PRICE NIXON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 06/23/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     In an amended complaint filed in the Jackson County Chancery Court, Bennie Harris alleged that the defendants wrongfully foreclosed on the Pascagoula property where he operated a used car lot.  The chancery court granted the defendants' motions for summary judgment on all of Harris's claims, and Harris appealed.

¶2. We hold that Harris waived any claim to have the foreclosure sale and substitute trustee's deed set aside when he deliberately dismissed the purchaser and owner of the property from the lawsuit. In addition, Harris waived any alleged failure to comply with contractual notice requirements found in the deed of trust because he failed to promptly object to the foreclosure sale and then failed to allege any defect in notice for over two years. Harris also fails to show any damages stemming from the alleged defect in notice. Moreover, Harris failed to present any significant and probative evidence to support his claim that his underlying debt was canceled; therefore, the chancery court did not err by finding that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law on that claim. Finally, Harris's remaining claims are barred by the statute of limitations. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In 1999, Harris executed a deed of trust encumbering two properties, a residential property in the Hilma Subdivision in Moss Point ("Parcel I") and a commercial property on 14th Street in Pascagoula ("Parcel II"). Parcel II was a used car lot (Twin City Motors) Harris owned and operated. The deed of trust secured a United States Small Business Administration (SBA) note. In 2003, the SBA assigned the note and deed of trust to Mortgage Electronic Registration System Inc. (MERS). Harris later sold Parcel I, and MERS filed a partial release in 2004, releasing Parcel I from the deed of trust. In 2012, Nationstar Mortgage LLC (Nationstar) began servicing Harris's note. In 2014, MERS assigned its interest in the note and deed of trust to Nationstar. The assignment erroneously included

2

aspects of the descriptions of both Parcel I and Parcel II, stating: "PARCEL I OF THE DEED OF TRUST, BEING LOT 15, HILMA SUBDIVISION . . . . Property is commonly known as: 4029 14th STREET, PASCAGOULA, MS." However, since Parcel I had already been released, and the release had been filed of record, MERS had no remaining interest in Parcel I and could only assign its interest in Parcel II to Nationstar.

¶4.     In 2013, Nationstar received notice that Harris's property would be sold at a tax sale due to nonpayment of 2010 property taxes. Harris made the 2010 tax payment before the property was sold. However, by September 2013, Harris had been two or more months behind on his mortgage payments for a significant period of time. In addition, property taxes for 2011, 2012, and 2013 had not been paid. Harris alleges that Nationstar had collected escrow funds for property tax payments but failed to make the tax payments. Harris told Nationstar that he would make no further mortgage payments until the escrow dispute was resolved. True to his word, Harris never made another mortgage payment.

¶5.     In October 2013, Nationstar mailed Harris a notice of default advising him of his right to cure the default and the consequences if he failed to do so, including acceleration of the debt and foreclosure. In December 2014, Nationstar sent Harris another letter informing him that he was 448 days behind on his note, that he needed to pay $19,062.18 to bring the note current, and that failure to bring the note current could result in foreclosure. The same day, Nationstar internally "charge[d] off" Harris's debt.

¶6.     In March 2015, Nationstar sent a mistakenly issued Internal Revenue Service (IRS) Form 1099-C to Harris that showed a debt of $15,719.43 had been discharged.

3

¶7.     In July 2015, Nationstar assigned the servicing of Harris's note to Veripro Solutions Inc. for collection.  Veripro sent Harris numerous letters concerning the debt and spoke to Harris by phone on several occasions.  In June 2016, Nationstar informed Harris that the Form 1099-C sent to him the previous year "was issued in error" and that Nationstar had "retracted the reporting of the Form 1099C with the [IRS]."  From 2016 to 2018, Veripro continued to offer Harris opportunities to pay off or bring his loan current for a reduced lump sum or monthly payments.  However, Harris did not respond.  Harris never made another payment on the mortgage after 2013.

¶8.     In December 2019, Nationstar assigned its interest in the note and deed of trust to NS193 LLC.  In October 2020, Veripro informed Harris that his mortgage had been assigned to Statebridge Company LLC for servicing.

¶9.     In September 2021, the substitute trustee under the deed of trust published and posted notice for three consecutive weeks as required by Mississippi Code Annotated section 89-1-55 (Rev. 2021).  On September 23, 2021, I-10 Properties LLC purchased the property at a public foreclosure sale for $56,000, which was the highest bid for the property.  Consistent with the published notice, the foreclosure sale was held just after 11 a.m. on the front steps of the Jackson County Courthouse.[1]  On October 1, 2021, the substitute trustee conveyed the property to I-10 by substitute trustee's deed.

---

[1] The sale must take place between the hours of 11 a.m. and 4 p.m.  *See* Miss. Code Ann. § 11-5-99 (Rev. 2019).  The published notice of sale stated that the property would be "offer[ed] for sale at public outcry and [sold] to the highest bidder for cash, within legal hours (being between the hours of 11:00 a.m. and 4:00 p.m.) at the front door of the Jackson County Courthouse."  This is standard language used in a notice of sale in Mississippi.  *See* K.F. Boackle, *Mississippi Real Estate Foreclosure Law* §§ 3:9, 4:5, 7:8 (2d ed. Supp. 2025).

¶10. Harris received actual notice of the foreclosure sale by mail and by reading the notice of the sale in the newspaper, which included contact information for the substitute trustee. However, Harris did not contact the substitute trustee prior to the sale or file suit to attempt to prevent the sale. Rather, Harris testified that he went to the Jackson County Courthouse around noon or 12:15 p.m. ("a little after lunch") on September 23—after the sale was complete—and returned later in the day, but he "[n]ever found anyone at the steps."

¶11. On October 19, 2021, Harris's lawyer emailed Statebridge requesting information regarding Harris's debt and the foreclosure. The lawyer asserted that Harris's debt had previously been canceled, as shown in the Form 1099-C he received in March 2015. On November 5, 2021, Statebridge responded that the 1099-C was issued "in error and subsequently retracted."

¶12. On November 16, 2021, I-10 filed an unlawful-entry-and-detainer complaint against Harris and Twin City Motors in the Jackson County County Court, seeking immediate possession of the property and the removal of Harris and Twin City Motors from the property. Harris and Twin City Motors filed an answer and counterclaim for injunctive relief. On March 3, 2022, the county court entered a judgment in favor of I-10, finding that I-10 was entitled to immediate possession of the property and that Harris and Twin City Motors were unlawfully withholding possession. The court stayed its judgment for 90 days subject to the condition that Harris pay $1,500 per month rent to I-10. Harris appealed to the circuit court; however, on September 13, 2023, the circuit court entered an agreed order dismissing the appeal and leaving in place the county court's final judgment.

5

¶13. Previously, on February 8, 2022, Harris had filed a complaint in the Jackson County Chancery Court. Harris alleged wrongful foreclosure and sought to set aside the trustee's deed and to obtain money damages. Nationstar, NS193, I-10, Statebridge, and the substitute trustee (the law firm of McCalla Raymer Liebert Pierce LLC ("MRLP")) were named as defendants. Harris asserted various causes of action and alleged that the foreclosure was wrongful because Nationstar had mishandled his escrow funds and subsequently canceled his debt.

¶14. The defendants all filed answers in chancery court denying Harris's allegations, asserting affirmative defenses, and denying liability. I-10 also filed a motion to dismiss or for judgment on the pleadings, arguing that the complaint failed to state a claim against I-10 and that it was a good faith purchaser for value and without notice of Harris's claims. Finally, I-10 filed a motion to transfer the case to circuit court.

¶15. After there was no action in the case for one year, the clerk filed a motion to dismiss for want of prosecution. Harris filed a response to the clerk's motion and a motion for a scheduling order and trial date. Harris also filed a motion to file an amended complaint to add MERS and Aurora Loan Services, which previously serviced Harris's note, as defendants. Harris's proposed amended complaint did not name I-10 as a defendant. The defendants filed responses in opposition to Harris's motions.

¶16. Harris filed a response to I-10's motion to dismiss that stated, in part, "Harris admits he has no claim against I-10 and, as a result, he did not include I-10 in his Amended Complaint." In the conclusion to his response, Harris again stated that I-10's motion to

6

dismiss "should be granted because Harris has no claim against it." However, Harris also continued to assert that because his debt had been canceled, "the substitute trustee's deed transferred nothing to I-10."

¶17. Following a hearing, the chancery court granted I-10's motion to dismiss and dismissed Harris's complaint as to I-10. The court also granted Harris's motion to file an amended complaint and denied the motion to transfer the case to circuit court.

¶18. On September 11, 2023, Harris filed *three successive* amended complaints: an "Amended Complaint," a "Corrected Amended Complaint," and, finally, an "Amended Corrected Amended Complaint." The "Corrected Amended Complaint" expressly disavowed any effort to set aside the trustee's deed to I-10, stating: "Plaintiff seeks to obtain monetary damages from all Defendants for their behavior that caused damage to Plaintiff *without seeking to set aside the trustee's deed to I-10 . . . .*" (Emphasis added). The Corrected Amended Complaint's prayer for relief concluded:

> **NOTE:** This Corrected Amended Complaint is filed to clarify that Plaintiff seeks to have the subject foreclosure sale declared wrongful for the sole purpose of obtaining monetary damages against the defendants named herein and *does not seek to void the trustee's deed to I-10 which is why I-10 is not named as a defendant in the amended complaint*.

(Emphasis added). The Corrected Amended Complaint also stated, "Plaintiff does not seek to set aside the trustee's deed to I-10, only monetary damages for wrongful foreclosure."

¶19. In contrast, the "Amended Corrected Amended Complaint" filed later the same day *did* "seek[] to have the foreclosure sale voided" and to have the "trustee's deed . . . set aside." In addition, a new concluding "NOTE" in the Amended Corrected Amended Complaint's

prayer for relief stated as follows:

> NOTE: Plaintiff filed earlier today an Amended Complaint [DOC 44].
> Plaintiff then filed his Corrected Amended Complaint which shows up on
> MEC Plaintiff's Amended Amended Complaint [DOC 45]. Plaintiff seeks to
> withdraw the Corrected Amended Complaint [DOC 45] and replace it with this
> Amended Corrected Amended Complaint.

Although the Amended Corrected Amended Complaint purported to seek to set aside the

foreclosure sale and trustee's deed, it still did *not* name I-10—the foreclosure purchaser,

grantee under the substitute trustee's deed, and new record owner of the property—as a

defendant. In addition, although Harris had moved for leave to amend his complaint at least

in part to add MERS and Aurora Loan Services as defendants, the record does not show that

Harris ever obtained a summons for either of them.[2]

¶20. The defendants that Harris served with process—Nationstar, NS193, Statebridge, and

MRLP—did not object to Harris's filing three amended complaints and simply answered the

last-filed Amended Corrected Amended Complaint.[3] The defendants subsequently filed

separate motions for summary judgment.[4]

¶21. The chancery court granted the defendants' motions for summary judgment. The

court noted that Harris had dismissed the foreclosure sale purchaser (I-10) from the case and

---

[2] *See Howard v. Rolin Enters. LLC*, 224 So. 3d 1264, 1267 (¶7) (Miss. Ct. App. 2017) (holding that a defendant that is named in a complaint but never served with process is not a party to the action and may be disregarded for purposes of appeal).

[3] *But see Meeks v. Hologic Inc.*, 179 So. 3d 1127, 1131-34 (¶¶11-22) (Miss. 2015) (holding that a plaintiff who obtains permission or consent to file an amended complaint cannot thereafter file additional amended complaints without permission or consent).

[4] NS193, Statebridge, and MRLP are represented by the same counsel and filed separate but substantially similar summary judgment motions.

"no longer seeks to set aside or unwind the foreclosure sale, but rather, now seeks only damages for wrongful foreclosure and potentially other wrongs related to the foreclosure and/or the servicing of the loan." The court further noted that the "crux" of Harris's claim was that Nationstar "forgave" his debt when it sent him a Form 1099-C in 2015 and therefore had no right to foreclose on the property. However, the court stated that the issuance of "a [Form] 1099-C does not, by itself, fully forgive or cancel a loan." Here, Nationstar did nothing more than "issue . . . and then retract" the Form 1099-C, and Harris presented no other evidence to create a genuine issue of *fact* on that question.

¶22. The court further concluded that the undisputed facts showed that Harris refused to make mortgage payments and defaulted on his note, that Nationstar pursued foreclosure and gave notice of the foreclosure sale, that Harris had actual advance notice of the sale, and that Harris nonetheless "did not take any legal action to object to or stop the foreclosure before, during, or after the sale." Citing, inter alia, *Pagador v. Trustmark National Bank*, 225 So. 3d 571, 576 (¶¶16-17) (Miss. Ct. App. 2017), the chancery court concluded that Harris's failure to object or take legal action to stop the foreclosure "waive[d] *all* objections or claims to challenge the foreclosure." Therefore, the court granted the motions for summary judgment filed by Nationstar, NS193, Statebridge, and MRLP and subsequently entered a final judgment dismissing all claims against them with prejudice.

¶23. Harris filed a motion to alter or amend the judgment pursuant to Mississippi Rule of Civil Procedure 59(e), in which he argued that the substitute trustee's deed was void because the foreclosure sale did not comply with the *contractual* notice requirements in his deed of

9

trust, although it did comply with the statutory notice requirements found in Mississippi Code Annotated section 89-1-55. Specifically, the notice of sale was published for three weeks (twenty-one days) as required by the statute, but not for four weeks (twenty-eight days) as required by the deed of trust. In response, the defendants argued that the chancery court had already rejected Harris's argument when it found that Harris waived the alleged defect by failing to promptly object or seek to set aside the foreclosure sale. The chancery court denied Harris's motion, and Harris filed a notice of appeal.

## ANALYSIS

### I. Harris waived any right to have the foreclosure sale or trustee's deed set aside.

¶24. It is unclear at this point whether Harris still seeks to set aside the trustee's deed. As discussed above, Harris filed a motion to amend his original complaint for the specific purpose of *dismissing* I-10—the grantee under the trustee's deed—as a defendant. In moving to amend his complaint, Harris conceded that he had no claim against I-10. Further, after Harris's motion to amend was granted, Harris filed a "Corrected Amended Complaint" in which he expressly disclaimed any claim to set aside the trustee's deed and clearly stated that he was *not* seeking to set aside the trustee's deed. But later the same day, Harris filed an "Amended Corrected Amended Complaint" in which he reasserted that the trustee's deed should be set aside. *See supra* ¶¶17-19.

¶25. Regardless of what Harris may or may not have intended, by voluntarily dismissing his claims against I-10, he waived any claim to have the trustee's deed set aside. A grantee is clearly a necessary party to an action to set aside a deed. *Murray v. Murray*, 358 So. 2d

10

723, 725 (Miss. 1978) ("A grantee is a necessary party in an action to set aside a fraudulent conveyance."); *Aldridge v. Aldridge*, 527 So. 2d 96, 98 (Miss. 1988) (holding that purchasers of a property were necessary parties in an action to impose a lien against the property); *see also, e.g.*, *Evans v. Fam. Sav. & Loan Ass'n of Va.*, 481 A.2d 1309, 1310 (D.C. 1984) (holding that the court could not "set aside the foreclosure sale because the purchaser [was] not a party to the[] proceedings"); *Reid v. Reid*, 272 S.E.2d 685, 685 (Ga. 1980) ("In an action for cancellation of a deed, the grantor and grantee are indispensible parties. This rule of law applies to actions seeking to cancel quitclaim deeds." (citation omitted)); *Aurea Aspasia Corp. v. Crosby*, 120 N.E.2d 759, 761 (Mass. 1954) (holding that a foreclosure sale purchaser is a necessary party in an action to set aside the sale); *In re Foreclosure of a Lien by Hunters Creek Townhouse Homeowners Ass'n Inc.*, 683 S.E.2d 450, 453 (N.C. Ct. App. 2009) (same).

¶26.    "Here, [Harris] knowingly sought to amend the initial complaint to remove [I-10] in its entirety from the lawsuit. This deliberate decision had consequences." *Crawford ex rel. Hodge v. E. Miss. State Hosp. Inc.*, 397 So. 3d 871, 881 (¶30) (Miss. Ct. App. 2024), *cert. denied*, 397 So. 3d 498 (Miss. 2024). I-10 was the purchaser at the foreclosure sale, the grantee under the trustee's deed, and the record owner of the subject property. Clearly, I-10 was a necessary party to any action to set aside the foreclosure sale and trustee's deed. By deliberately dismissing I-10 from this lawsuit, Harris waived any right to have the foreclosure sale and trustee's deed set aside.

> **II.    Harris waived any claim based on an alleged breach of the contractual notice requirement.**

11

¶27.    "Mississippi is a non-judicial foreclosure state." *Soffra v. Shieldsboro Dev. Inc.*, 314 So. 3d 129, 140 (¶40) (Miss. Ct. App. 2020) (quoting *Blanchard v. Mize*, 186 So. 3d 403, 406 (¶13) (Miss. Ct. App. 2016)). "As such, Mississippi law does not require the mortgagee to directly notify the mortgagor of an impending foreclosure." *Id.* (quoting *Blanchard*, 186 So. 3d at 406 (¶13)). "By statute, a sale under a deed of trust only requires notice by publication and by posting at the county courthouse." *Id.*; *see* Miss. Code Ann. § 89-1-55.

¶28.    Under Mississippi law, notice that land will be sold under a deed of trust must be published and posted for three consecutive weeks preceding the sale. Miss. Code Ann. § 89-1-55. In this case, the substitute trustee complied with the notice requirements of section 89-1-55 by publishing and posting the notice of sale for three consecutive weeks prior to the sale. Indeed, Harris admitted that he saw the notice in the newspaper.

¶29.    However, "the parties to the deed of trust may contract for more notice than required by statute." *Soffra*, 314 So. 3d at 140 (¶41) (quoting K.F. Boackle, *Mississippi Real Estate Foreclosure Law* § 3:11 (2d ed. Supp. Sept. 2020)); *see also EB Inc. v. Allen*, 722 So. 2d 555, 561 (¶21) (Miss. 1998) ("[A]ny requirements beyond those expressed in the applicable statutes are determined by the provisions of the note and deed of trust."). "If a deed of trust 'requires more' notice than the statute, 'then the terms of the deed of trust as to notice must be followed and complied with in accordance with the contract of the parties.'" *Soffra*, 314 So. 3d at 140 (¶41) (brackets and ellipsis omitted) (quoting *Wilczinski v. Watson*, 110 Miss. 86, 94, 69 So. 1009, 1010 (1915)).

¶30.    Here, the deed of trust required one more week of notice by publication than the

12

statute. Specifically, the deed of trust provided that the trustee would give "four weeks' notice" of the sale in a newspaper published or distributed in the county in which the property was located. The substitute trustee did not publish the notice for four weeks prior to the sale, as required by the deed of trust.

¶31. However, Harris did not object to the September 23, 2021 foreclosure sale prior to the sale based on any alleged defect in the notice. Indeed, Harris did not object even though he acknowledged that he had actual notice of the date and location of the sale and was represented by counsel at the time. One month later, Harris's attorney emailed Statebridge requesting information about the foreclosure and underlying debt, but he did not allege any deficiency in the notice of the foreclosure sale. In February 2022, Harris filed suit alleging a wrongful foreclosure. Harris's complaint alleged that the underlying note had been canceled and that Nationstar had mishandled Harris's escrow funds and tax payments years earlier; however, the complaint still did not allege any deficiency in the notice of the foreclosure sale. In September 2023, Harris filed three successive amended complaints, yet Harris still did not allege any deficiency in the notice of the foreclosure sale. The first time that Harris raised the contractual notice requirement was in October 2023 in a response to the defendants' motions for summary judgment.

¶32. The defendants argue that Harris waived this issue by failing to timely object to the foreclosure. In *Robinson v. Trustmark National Bank*, 179 So. 3d 1146 (Miss. Ct. App. 2015), *cert. denied*, 181 So. 3d 1010 (Miss. 2016), *cert. denied*, 580 U.S. 844 (2016), Trustmark conducted a foreclosure sale, and eleven months later, the debtor (Robinson) filed

13

suit to set aside the sale, alleging that the sale was improperly conducted and tainted by fraud. *Id.* at 1148-49 (¶¶4-5, 11). However, this Court stated that "[t]he general rule is that any person who is present and fails to object to the manner in which the [foreclosure] sale is made cannot subsequently have the sale set aside on the ground that it should have been conducted in a different manner." *Id.* at 1149 (¶13) (quoting *Nichols v. Bush*, 913 So. 2d 387, 391 (¶21) (Miss. Ct. App. 2005)). We noted that there was "no dispute that Robinson received notice of the foreclosure sale," but she "failed to respond or acknowledge the foreclosure proceedings before, during, or immediately after the sale." *Id.* at (¶14). Indeed, just as in this case, "the first pleadings filed by Robinson were pleadings to stop [an] unlawful detainer [action] and to get a restraining order; Robinson did not challenge the sale itself." *Id.* Robinson also argued that because she filed her wrongful foreclosure complaint "well within the statute of limitations," we should consider it "to be filed 'immediately' after the sale." *Id.* But this Court disagreed, reasoning that "Robinson waited to file the complaint to get the foreclosure set aside." *Id.* We held that a debtor "with notice of a foreclosure sale" "waives his grounds for challenging the sale" if he "does not object before, during, or immediately after the sale." *Id.* at 1150 (¶16).

¶33.    Similarly, in *Pagador v. Trustmark National Bank*, 225 So. 3d 571 (Miss. Ct. App. 2017), the debtor filed a wrongful foreclosure suit after failing to object to the foreclosure sale before, during, or immediately after the sale. *Id.* at 576 (¶¶16-17). The lead opinion concluded that the debtor had waived his objections to the foreclosure sale, reaffirming that when a debtor fails to object to the sale, "he has waived any ground to challenge the

foreclosure." *Id.* at (¶16). The lead opinion further stated that this rule applied equally whether the debtor sought to have the sale set aside or damages only. *Id.* at (¶17) (citing *Robinson*, 179 So. 3d at 1150 (¶19)). A specially concurring opinion argued that the debtor waived the right to have the sale set aside, but not a claim for damages for wrongful foreclosure. *Id.* at 577-78 (¶¶19-22) (Barnes, J., specially concurring).[5]

¶34. Here, despite having notice of the foreclosure sale, Harris waited over four months after the sale to file suit challenging the foreclosure. Even then, Harris did not allege any deficiency in the notice of the sale or failure to comply with contractual notice requirements. It was not until October 2023—*more than two years after the foreclosure sale*—that Harris first alleged a breach of the deed of trust's notice requirement. Under this Court's decisions in *Nichols*, *Robinson*, and *Pagador*, we conclude that Harris waived any challenge to the sale based on an alleged failure to comply with a contractual notice requirement.[6]

---

[5] Eight judges participated in *Pagador*. Chief Judge Lee authored the lead opinion, which three judges joined in full, two joined in part and in result, and one joined in result only. One judge joined Judge Barnes's separate opinion.

[6] Harris relies heavily on this Court's decision in *Soffra*, which affirmed a chancellor's ruling that a trustee's deed was void because the trustee failed to comply with a contractual notice requirement. *See Soffra*, 314 So. 3d at 140-41 (¶¶39-44). However, in *Soffra*, there were a myriad of disputes of fact as to whether the plaintiff was even in default; the plaintiff made repeated attempts to cure the alleged defaults; the plaintiff denied that she had ever received personal service of notice of the foreclosure sale, as required by the parties' deed of trust; the plaintiff filed suit to set aside the trustee's deed within three months of the foreclosure sale; and the purchaser at the foreclosure sale was the creditor and beneficiary of the deed of trust, not a third-party, good-faith purchaser for value. *See id.* at 133-35, 137, 140-41 (¶¶3-13, 24-26, 39-44). In *Soffra*, there was no factual basis for an argument that the debtor waived her objection to the defective notice, and the defendant made no such argument on appeal. Indeed, we noted that the defendant "completely fail[ed] to address the chancellor's finding that the foreclosure was conducted without proper notice." *Id.* at 140 (¶39). Thus, the material facts in *Soffra* were substantially different from

15

¶35. We also conclude that even if Harris's waiver did not extend to a claim for damages, there is simply no evidence in the record or basis for a claim for damages based on a breach of the contractual notice requirement. By the time of the foreclosure sale, Harris had steadfastly refused to make any mortgage payments for approximately *eight years*, and despite receiving actual notice of the foreclosure sale, he remained unwilling to cure the default or avoid foreclosure. Accordingly, there is no basis for any claim of damages based on the substitute trustee's failure to publish notice for one additional week.

### III. The chancery court correctly ruled that there were no genuine issues of material fact and that defendants were entitled to summary judgment on Harris's claim that his debt had been canceled.

¶36. Harris argues that the chancery court erred by granting summary judgment because Nationstar canceled the underlying debt in 2014 when it issued an IRS Form 1099-C. Several other courts have addressed similar arguments.

¶37. The United States Court of Appeals for the Fourth Circuit explained that the IRS regulation that requires creditors to file Form 1099-Cs "lists eight 'identifiable events' that trigger the reporting obligation." *F.D.I.C. v. Cashion*, 720 F.3d 169, 178 (4th Cir. 2013) (citing 26 C.F.R. § 1.6050P-1). In certain circumstances, "the plain language of the regulation" will require

> a creditor . . . to file a Form 1099-C even though an actual discharge of indebtedness has not yet occurred or is not contemplated. Moreover, the identifiable event triggering the obligation may not involve an actual discharge of the debt; rather, the event may be *deemed* to constitute a 'discharge' 'solely for purposes of' determining the Form 1099-C reporting obligation.

the present case, and no issue of waiver was raised or decided in *Soffra*.

16

*Id.* at 178-79 (brackets omitted). Thus, based on "[t]he plain language of the regulation," the court "conclude[d] that filing a Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred." *Id.* at 179. The court also noted that the IRS had "clearly expressed" this understanding of the regulation in prior information letters. *Id.* The court concluded that because a creditor may be required to file the form "even where a debt has not been cancelled," and because the form is intended to serve as "a reporting mechanism to the IRS," not a "means of effectuating the discharge of a debt," the form was *not* "in and of itself" sufficient to survive summary judgment on a claim that a debt had been canceled. *Id.* at 180. Rather, to create a genuine issue of fact, a debtor must come forward with some other evidence that the creditor in fact canceled the debt. *Id.* at 180-81; *accord, e.g.*, *Gericke v. Truist*, No. 21-1776, 2022 WL 2128561, at *2-4 (3d Cir. June 14, 2022); *Flathead Bank of Bigfork v. Masonry by Muller Inc.*, 383 P.3d 215, 216-19 (Mont. 2016); *Grayson v. Westwood Buildings L.P.*, 859 S.E.2d 651, 678 (Va. 2021); *Bank of Am. N.A. v. Rolf*, 188 A.D.3d 770, 775 (N.Y. App. Div. 2020) (holding that "a Form 1099-C is not, by itself, evidence that a debt was discharged" (brackets and quotation marks omitted)); *Verdini v. First Nat'l Bank of Pa.*, 135 A.3d 616, 619-23 (Pa. Super. Ct. 2016); *Lifestyles of Jasper Inc. v. Gremore*, 299 S.W.3d 275, 277 (Ky. Ct. App. 2009).

¶38.    The Fourth Circuit's opinion in *Cashion* represents the "majority" view that the mere filing of a "Form 1099-C is not evidence that a debt was discharged." *Wells Fargo Advisors LLC v. Meyer*, 735 F. App'x 23, 24 (2d Cir. 2018). Only a "small minority of courts" have

17

held otherwise. *Grayson*, 859 S.E.2d at 678 (quotation marks omitted). We agree that the Fourth Circuit's approach is consistent with the plain language of the regulation, which requires creditors to file the form in certain circumstances in which there is no actual discharge of a debt.[7] Therefore, a Form 1099-C is not, by itself, evidence that a debt has been canceled or discharged.

¶39. In the present case, Nationstar sent a Form 1099-C to Harris in 2015. However, Nationstar also assigned the debt to Veripro for servicing, and Veripro continued efforts to collect the debt, sending Harris numerous communications attempting to negotiate a new payment plan. Then, in 2016, Nationstar notified Harris that the Form 1099-C had been "issued in error" and that the error had been reported to the IRS. Harris offered *no affidavit or other evidence* to support his claim that the later-retracted Form 1099-C evidenced an *actual* cancellation of the debt.[8] Indeed, in his sworn testimony in county court in the unlawful-entry-and-detainer case, Harris merely asserted that the debt had been canceled because he received a "1099," stating that he "used that as a basis of saying we didn't owe." Addressing this issue, the chancery court concluded that there was no genuine issue of material fact and that Nationstar was entitled to summary judgment, reasoning as follows:

[7] We note that the regulation was materially amended in November 2016, after the events at issue in this case. *See Removal of the 36-Month Non-Payment Testing Period Rule*, 81 FR 78908-01, 2016 I.R.B. 768 (Nov. 10, 2016). We express no opinion on the significance of the subsequent amendments, since they have no effect on this case.

[8] We note that the instructions to the debtor in the standard Form 1099-C issued to Harris expressly contemplate that the form may have been issued "because an identifiable event ha[d] occurred" even though "the debt ha[d] not actually been discharged." The form did not include an "identifiable event code" to indicate why it had been issued.

18

Based upon the evidence in the record, it is undisputed that Nationstar did not do anything more than issue a 1099-C in 2014 and then retract it in 2016. [Harris] has not presented any evidence that would create any fact issue on that question; rather, [Harris's] only response to this undisputed fact is mere allegation. The law pertaining to summary judgment is clear that the non-movant may not rest upon mere allegations in the face of substantial evidence of a lack of disputed fact issues. In light of the undisputed fact that Nationstar did nothing more than issue a 1099-C, which it then retracted, there is no genuine issue of material fact as to the question of whether the loan was "forgiven" in 2014. Based upon the undisputed facts and the applicable law, the loan was not forgiven by Nationstar in 2014.

(Citation omitted).

¶40. On appeal, we review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "When the plaintiff, as in this case, bears the burden of proof at trial, a defendant may elect to move for summary judgment by identifying deficiencies in the plaintiff's evidence." *Maxwell v. Baptist Mem'l Hosp.-DeSoto Inc.*, 15 So. 3d 427, 433 (¶15) (Miss. Ct. App. 2008).

¶41. In responding to a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element

essential to the party's case, and on which that party will bear the burden of proof at trial."

*Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010) (quotation marks omitted). "The non-moving party has the burden of providing supportive evidence of *significant* and *probative* value in opposition to the motion for summary judgment." *Ward v. Ill. Cent. R.R. Co.*, 271 So. 3d 466, 469 (¶8) (Miss. 2019) (emphasis added) (ellipsis and quotation marks omitted) (quoting *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 795-96 (Miss. 1995)). When the non-moving party who "will bear the burden of proof at trial" "fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial and the moving party is entitled to judgment as a matter of law." *McClinton v. Delta Pride Catfish Inc.*, 792 So. 2d 968, 973 (¶9) (Miss. 2001) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)). As our Supreme Court has emphasized,

> [t]he presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a *material* one, one that matters in an outcome determinative sense. The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the *material* issues of fact.

*Federinko v. Forrest County*, 381 So. 3d 343, 351 (¶35) (Miss. 2024) (citations, brackets, and quotation marks omitted) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 252 (Miss. 1985)).

¶42. Here, the chancery court did not err by granting summary judgment on Harris's claim that the foreclosure was wrongful because the underlying debt had been canceled. For the reasons explained above, the mere issuance of a Form 1099-C is inconclusive and is not significant and probative evidence that the debt was canceled. *Cashion*, 720 F.3d at 178-81.

20

The issuance of such a form is not sufficient, "in and of itself," to create a genuine issue of material fact or survive summary judgment on a claim that a debt has been canceled. *Id.* at 180. Here, Harris presented *no other evidence* that the debt had been canceled. Indeed, in his sworn testimony, Harris admitted that the form was the only basis for his allegation that the debt had been canceled. Moreover, Nationstar continued to attempt to collect the debt even after it (mistakenly) issued the form and later informed Harris that the form had been issued in error. Under these circumstances, we conclude that the chancery court properly held that there were no genuine issues of material fact and that the defendants were entitled to summary judgment on this claim. M.R.C.P. 56(c).

### IV. Any remaining claims are barred by the applicable statute of limitations.

¶43. As discussed above, Harris also alleges that Nationstar mishandled his escrow funds and failed to pay property taxes due on his property. However, these claims accrued no later than 2013 when Harris made these same allegations and stopped paying his mortgage. Harris did not file suit until 2022. Therefore, these claims are all barred by the applicable three-year statute of limitations. *See* Miss. Code Ann. § 15-1-49 (Rev. 2019); *Anderson v. LaVere*, 136 So. 3d 404, 411 (¶32) (Miss. 2014) (stating that section 15-1-49 applies to claims for breach of contract, conversion, misrepresentation, and unjust enrichment); *White v. White*, 355 So. 3d 233, 240 (¶19) (Miss. Ct. App. 2022) (stating that section 15-1-49 applies to claims for breach of contract, conversion, unjust enrichment); *McDonnel v. Miller*, 655 F. App'x 229, 232 & n.4 (5th Cir. 2016) (stating that section 15-1-49 applies to an equitable estoppel claim to the extent "equitable estoppel is a separate cause of action under Mississippi law").

21

**CONCLUSION**

¶44. In sum, Harris waived any claim to have the foreclosure sale and substitute trustee's deed set aside when he dropped his claims against I-10 and deliberately dismissed them from the case. In addition, Harris waived any alleged failure to comply with the deed of trust's notice requirements when he failed to promptly object to the foreclosure sale and then failed to allege any defect in notice for over two years. In addition, Harris suffered no cognizable damages from the alleged defect in notice. Harris also failed to present any significant and probative evidence to support his claim that his debt was canceled; therefore, the chancery court properly concluded that the defendants are entitled to judgment as a matter of law on that claim. Finally, Harris's remaining claims are barred by the statute of limitations.

¶45. Accordingly, the chancery court's order granting summary judgment in favor of all defendants is **AFFIRMED**.

**CARLTON, P.J., LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. BARNES, C.J., WESTBROOKS AND LASSITTER ST. PÉ, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND LASSITTER ST. PÉ, JJ.; BARNES, C.J., JOINS IN PART.**

**McDONALD, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶46. I agree with the majority that by failing to join I-10 Properties LLC in his final amended complaint, Harris waived his right to have the trustee's deed set aside. I also agree that Harris's claim against Nationstar for failing to pay the delinquent taxes out of the escrow funds Nationstar held was barred by the three-year statute of limitations for breach of contract.

22

¶47. However, I am of the opinion that Harris did not forfeit his right to damages against those who improperly conducted the foreclosure when, as even the majority agrees, they failed to give the proper notice set out in the deed of trust. In *Soffra v. Shieldsboro Development Inc*., 314 So. 3d 129, 141 (¶44) (Miss. Ct. App. 2020), we held that failing to comply with the deed-of-trust notice provisions voided the foreclosure sale. In addition, the majority relies heavily on *Robinson v. Trustmark National Bank*, 179 So. 3d 1146 (Miss. Ct. App. 2015), for the proposition that Harris waived his damages claim because he failed to object prior to the foreclosure. However, the sale was not set for a specific time, and Harris came to the courthouse to object four times during the window of time indicated in the notice. Although Harris may have waived his right to injunctive relief by not joining I-10, he still was entitled to damages resulting from the clearly wrongful foreclosure.

¶48. In addition, Harris established a genuine issue of material fact in dispute, i.e., whether his debt had been canceled. Harris presented the IRS Form 1099-C Nationstar issued, which stated that the debt had been canceled or discharged, and Nationstar had submitted its internal account records that confirmed the issuance of the 1099-C form because the debt was "charged off." Although Nationstar countered that the 1099-C form was issued "in error," it provided no testimony or affidavit to support that claim. Because Harris is not barred from bringing his claim of wrongful foreclosure for damages for breach of contract, and because the record reflects genuine issues of material fact in dispute, summary judgment should not have been granted.

**Additional Facts**

23

¶49. The majority sets out the facts it finds pertinent to the issues. There are others, however, that should be added.

¶50. In 1999, Harris borrowed $85,100 from the Small Business Administration (SBA), and over the years, various assignees and their loan servicers escrowed part of the monthly payment for the property taxes each year. Had everything gone smoothly, the loan would have been paid off in January 2016.

¶51. Securing the loan was a deed of trust, which provided that in the event of a default, Harris would be given four weeks' publication notice before the property could be sold, even though under Mississippi law only three weeks' publication notice was required.

¶52. Over the next fourteen years, Harris paid on the mortgage to various loan servicers, one of whom was Aurora Loan Services, a subsidiary of Nationstar, which managed the loan in 2004. In 2012, Nationstar Mortgage LLC itself took over as the loan servicer. In 2013, Harris learned that the 2010, 2011, and 2012 property taxes had not been paid, even though there should have been money in his loan's escrow account to do so. Harris learned this when the county notified him that the redemption period for the 2010 tax sale would expire on August 29, 2013, and he would lose the property if the 2010 taxes were not paid and the property was not redeemed. According to Nationstar's internal history of the loan, Harris contacted them and questioned why the taxes had not been paid. Nationstar took no action, and Harris paid $3,960.23, which included the 2010 taxes and penalties, to redeem the property. This began years of disagreement between the parties about whether Nationstar credited Harris for the $3,960.23 he paid for the 2010 redemption and for the 2011 and 2012

24

delinquent taxes he paid to redeem the property for those tax years. Harris stopped making payments in 2013 until this dispute of what he actually owed was resolved, given his personal payment of back taxes and the money Nationstar was holding in escrow that had not been paid out.

¶53. Thereafter, Nationstar documented its efforts to collect on the debt, which as of December 14, 2014, Nationstar claimed was $19,062.18. If Harris did not pay, Nationstar's internal records showed that on December 13, 2014, "RBAKER" (Ramie Baker) "APPROVED [the account] FOR CHARGE-OFF THIS MONTH." That same entry was repeated on December 30, 2014, when Harris did not pay. In a January 9, 2015 entry, Nationstar recorded a loss on the account (i.e., "entered costs $26,348.63 loss; Isams loss $10,380.36"). On that same day, Nationstar entered "charge off lien" in their running record. On January 14, 2015, Nationstar determined that no escrow analysis was needed "due to loan is PIF." On February 10, 2015, the records show that the debt was added to the "loss load," and on March 5, 2015, Nationstar sent Harris an IRS Form 1099-C reflecting that Nationstar had discharged $15,719.43 of his debt.

¶54. The 1099-C form instructed Harris that the debt had been canceled or forgiven and that he was required to declare this amount as "other income" on his income taxes. Harris did just that, reporting the amount on his 2014 tax return and paying additional taxes on his increased income.

¶55. Even though Nationstar had apparently discharged the debt in March, in July 2015 at Nationstar's direction, Veripro Solutions began to contact Harris to negotiate a payment plan

25

or settlement if possible. Veripro's internal records showed that they attempted to contact Harris numerous times between July 2015 and August 2020 with little success. In an August 17, 2020 entry, Veripro employee Sandra Skubis noted that she spoke to Harris, who told her about tax payment issues and his receipt of the 1099-C form. Based on that, Harris believed he did not owe anything on the account and he has held this position since 2015. On August 17, 2020, Skubis left Harris a message, telling him that she had learned that Nationstar did send a 1099-C form, but it later sent a retraction letter, advising Harris of their "mistake." Harris claims he never received the June 16, 2016 retraction letter that appears in the record.

¶56. Thereafter, as noted by the majority, the last holder of the account, NS193 LLC foreclosed on the property on September 23, 2021, and it is undisputed that notice of the sale was only published three times, not four times as required by the deed of trust. As of August 9, 2021, Statebridge (NS193's servicer) claimed Harris owed $15,326.98 on the principal of the loan, $4,866.99 in interest, and $110 in other fees for a total of $20,303.56.

¶57. The notice of the foreclosure said the sale would take place between the hours of 11 and 4 p.m. Harris came to the courthouse four times during that period to object to the sale, starting at noon, then again at 1:45, then again at 3:00, and then again at 3:45. Despite the time window given in the notice, the sale occurred a little bit after 11 a.m. and no one from the trustee's office stayed through 4 p.m. in case someone appeared. I-10 purchased the property for $56,000.

¶58. Shortly thereafter, on October 19, 2021, attorney Dustin Thomas, who had represented Harris years earlier, emailed Statebridge and asked for the loan history. Thomas wrote,

26

I have dealt with Aurora on this mortgage years ago and each time there has been an acknowledged error in the escrow servicing account which led to false collection attempts[.] [T]hey then cancelled the debt totaling $15, 719.43 and sent a 1099-C cancellation but later decided to include this money in debt owed by Mr. Harris telling him "we changed our mind."

Statebridge replied, stating that the 1099-C form was issued "in error," and subsequently retracted.

¶59. On February 8, 2022, Harris filed suit against several defendants, including I-10. All filed answers, and I-10 filed a motion to dismiss. The case stalled until the clerk filed a motion to dismiss for lack of prosecution on May 31, 2023. Harris answered that his counsel had experienced significant medical issues and that he intended to pursue his claims. On August 23, 2023, the chancery court dismissed I-10 and allowed Harris to file an amended complaint. On September 11, 2023, Harris filed three amended complaints. In his final Amended Corrected Amended Complaint, Harris did not sue I-10 although he sought not only damages from the wrongful foreclosure, but also to set aside the trustee's deed.

¶60. On September 22, 2023, defendants Nationstar, NS193, Statebridge (the last loan servicer), and the substituted trustee that handled the foreclosure, McCalla, Raymer, Liebert, Pierce LLC, filed answers to the last amended complaint, and four days later, on September 26, 2023, all the defendants filed motions for summary judgment. The parties had not engaged in any formal discovery.

**Discussion**

**I.      Harris's claim for damages from the wrongful foreclosure was not barred, waived, or forfeited.**

¶61. The majority agrees that pursuant to the terms of the deed of trust, Harris was entitled

27

to publication of the notice of foreclosure for four weeks, not the statutory three weeks required by Mississippi Code Annotated section 89-1-55 (Rev. 2021). This is because "[u]nder Mississippi law, '[t]he deed of trust itself is a contract between the parties,' and it is our duty to enforce the parties' contract according to its terms." *Soffra* , 314 So. 3d at 141 (¶44). In *Soffra* we held that a foreclosure sale was void when it was held twenty-eight days after notice was given, instead of the thirty days required by the deed of trust. *Id*. We stated that a party breaches the contract if he or she gives less notice than contracted for, and "we are constrained to hold that the [foreclosure] sale by the trustee was void." *Id*.

¶62. In the case at hand, although the majority agrees that Nationstar did not comply with the notice provisions in Harris's deed of trust, the majority holds that Harris waived his claim for the breach of the contractual notice provision because he failed to timely object to the lack of proper notice before the foreclosure sale. In my opinion, the majority is wrong on both the facts and the applicable law.

¶63. Factually, the record reflects that Harris did attempt to object to the foreclosure by appearing at the courthouse on the day of the sale. The notice gave no specific time for the sale, just the window of 11 a.m. to 4 p.m., giving the misleading impression that a debtor had five hours to appear and object. In addition, a debtor could believe that someone would be present between 11 a.m. and 4 p.m. for purchasers or objectors to contact, and that the latest a debtor could object was 4:00 p.m. Harris testified that he came to the courthouse at 12 noon, 1:30 p.m., 3:00 p.m., and 3:45 p.m. but no one was there. Certainly, any debtor returning to the courthouse four times during the hours listed in the notice showed an intent

28

to protest the foreclosure before the property was sold. Thereafter, Harris contacted his former attorney who emailed Statebridge less than a month later (October 19, 2021) to inquire about the outstanding debt in light of the Form 1099-C that Nationstar had sent. Not being satisfied with Statebridge's response, Harris filed suit on February 8, 2022. Thus, factually, Harris did complain about the foreclosure at the time of the sale and thereafter.

¶64. Under the law, Harris timely filed suit. The statute of limitations for wrongful foreclosure actions is three years rather than the ten-year statute applicable to actions to recover land. *Est. of Stephens v. Est. of Palmer*, 324 So. 3d 1175, 1181 (¶24) (Miss. Ct. App. 2021); *see also Tenn. Props. Inc. v. Gillentine*, 66 So. 3d 695, 698 (¶10) (Miss. Ct. App. 2011) (stating the statute of limitations for wrongful foreclosure actions is three years from the date of the foreclosure). Here, the foreclosure sale was held on September 23, 2021, and Harris filed his claims for wrongful foreclosure on February 8, 2022, well within the three-year statute of limitations.

¶65. Moreover, in a wrongful foreclosure action, Harris had the right to sue either to have the sale set aside and or recover from the mortgagee the damages suffered as a result of the wrongful foreclosure. *Soffra*, 314 So. 3d at 142 (¶49) (citing *Nat'l Mortgage Co. v. Williams*, 357 So. 2d 934, 936 (Miss. 1978)). In *National Mortgage*, a dispute arose between the parties about whether Williams was delinquent in her payments. *Nat'l Mort.*, 357 So. 2d. at 935. National Mortgage proceeded to foreclose and purchased the property at the sale. *Id.* National Mortgage's later suit to dispossess Williams was dismissed when, during trial, it was determined that Williams had not been delinquent in fact. *Id.* Williams sued for

29

damages for the wrongful foreclosure and was awarded actual and punitive damages. *Id*. at 934. On appeal, National Mortgage challenged the damage award and the Mississippi Supreme Court held that actions at law may be pursued for damages for premature foreclosures or improper execution of a rightful foreclosure. *Id.* at 936.

¶66. In addition, "a plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot." *Trosclair v. Freedom Mortg. Corp.*, No. 1:23-CV-336-TBM-RPM, 2024 WL 4957593, at *7 (S.D. Miss. Sept. 27, 2024).

¶67. The majority, however, asserts that under *Robinson v. Trustmark National Bank*, 179 So. 3d 1146 (Miss. Ct. App. 2015), and *Pagador v. Trustmark Nat'l Bank*, 225 So. 3d 571 (Miss. Ct. App. 2017), even Harris's damage claims are barred, again because the majority finds that Harris failed to object before the foreclosure sale. But, as noted above, Harris did object before, during, and after the sale and thus satisfied *Robinson*'s requirement. Nevertheless, Harris should also not be bound by the *Robinson* pre-sale objection requirement that was further articulated in *Pagador* because Harris's facts are distinguishable from those two cases and because those cases pre-date *Soffra*, which imposed no such pre-sale-objection requirement.

¶68. In *Robinson*, the plaintiff filed suit only for injunctive and declaratory relief, seeking to have the foreclosure set aside; she did not seek damages for wrongful foreclosure. *Robinson*, 179 So. 3d at 1147 (¶1). Here, Harris also sought damages from the wrongful foreclosure. In *Robinson*, the debtor had received notice of the foreclosure and failed to do

30

anything. *Id.* at 1149 (¶14). Here, Harris did, appearing at the courthouse four times to object to the sale. In *Pagador*, the plaintiff claimed he was not in default on his mortgage at the time of the foreclosure because he claimed he had been granted a third forbearance. *Pagador*, 225 So. 3d at 574 (¶9). However, he failed to produce any documentary evidence or affidavit testimony to support his claim. *Id.* at 575 (¶9). In the case at hand, Harris, who claimed he did not owe the debt, provided his 1099-C form and Nationstar's account records support his claim that his debt had been forgiven prior to the foreclosure. Moreover, in *Pagador*, the VA regulations the plaintiff claimed Trustmark did not follow were not incorporated into the deed of trust. *Id.* at 575 (¶13). Here, the notice requirements Nationstar violated were contained in Harris's deed of trust and were a matter of contract. Finally, as the dissent in *Pagador* pointed out, *Robinson* did not stand "for the proposition that there is absolutely no relief available to a plaintiff after foreclosure if he fails to object to the proceedings." *Id.* at 578 (¶21).

¶69. This Court's later decision in *Soffra* is directly on point and should control. In that case, Tingstrom entered into an owner-financed sale when he purchased a home from Soffra. *Soffra*, 314 So. 3d at 132 (¶1). The loan was secured by a deed of trust requiring thirty days' notice in the event of a foreclosure. *Id.* at 140 (¶42). Later, Soffra claimed Tingstrom was in default due to missed payments and Tingstrom claimed that he had made the payments and that his account was current. *Id.* at 132-33 (¶1). Despite Tingstrom's claims, Soffra foreclosed on September 9, 2016, but only gave twenty-eight days' notice before the sale. *Id.* at 141 (¶43). In October 2016, Tingstrom received a complaint for eviction, and he filed

31

suit for wrongful foreclosure on December 6, 2016 (three months after the foreclosure). *Id.* at 134 (¶12). The chancery court held that Soffra had wrongfully foreclosed on the property because he failed to provide proper notice. *Id.* at 137 (¶26). On appeal, we agreed with the chancery court, holding:

> Any requirements beyond those expressed in the applicable statutes are determined by the provisions of the note and deed of trust. If a deed of trust requires more notice than the statute, then the terms of the deed of trust must be followed and complied with in accordance with the contract of the parties.

*Id.* at 141 (¶41) (parentheses and quotation marks omitted) (citing *Wilczinski v. Watson*, 110 Miss. 86, 69 So. 1009 (1915)). We found that the notice did not comply with the terms of the deed of trust and that we were "constrained to hold that the sale by the trustee was void." *Id.* at (¶44). We imposed no requirement that Tingstrom act before the sale or forfeit his claim. Similarly, in Harris's case, Nationstar did not comply with the notice requirements in the deed of trust and we should find the sale void and that Harris was entitled to recover damages from the wrongful foreclosure.

¶70. The majority tries to distinguish *Soffra*, stating that in that case there were a myriad of disputes, including whether the plaintiff was in default, whether he had tried to cure the default, and whether he received personal service of the foreclosure sale. But, there were also several disputes in our case, too, including whether Harris owed Nationstar anything, after he had paid fourteen years on a seventeen-year mortgage and then had to pay three years of taxes that Nationstar should have but did not. Moreover, there was a dispute as to whether the debt had been discharged by Nationstar when it issued the Form 1099-C, and a dispute as to whether Nationstar had made a mistake and could unilaterally withdraw it when Harris

32

had relied upon it and even paid extra income tax because of the discharge of the debt. So there were a myriad of disputes in Harris's case as well. Further, Harris showed up on the day of the sale to dispute the debt and foreclosure.

¶71. The majority also points out that the plaintiff in *Soffra* filed suit within three months of the foreclosure; but here Harris filed suit only slightly later, four and a half months after the foreclosure sale. The majority further asserts that in *Soffra*, there was no "factual basis" for an argument that the plaintiff had waived his claim as there is in Harris's case. However, Soffra asserted that it sent Tingstrom notice of the foreclosure and could have argued that Tingstrom should have received the notice and appeared at the sale to object. *Soffra*, 314 So. 3d at 135 (¶11). Obviously, Soffra did not raise this defense because he had clearly violated the notice provision in the deed of trust and prematurely foreclosed, which we held rendered the sale void. Here, too, Nationstar has no defense that it failed to follow the notice provisions of the deed of trust. Thus, if anything, Harris's facts are stronger than the plaintiff's facts in *Soffra*, and we should also render the sale void as we did in *Soffra*.

¶72. Finally, the majority asserts that Harris's wrongful foreclosure suit is time-barred because Harris only challenged the improper three-week notice for the first time in his October 2023 response to the motions for summary judgment. However, as one basis for his breach of contract claim in his original complaint, Harris pled that the parties had a valid and binding contract in the form of a deed of trust and that the defendants had broken that contract "by failing to abide by the terms and conditions of the deed of trust" when they foreclosed. In the prayer for relief, Harris sought damages for the wrongful foreclosure. In

33

the Amended Corrected Amended Complaint, Harris pled that the foreclosure sale was wrongfully conducted. Even though this amended complaint was filed on September 11, 2023, it was still within the three-year statute of limitations.[9]

¶73. In summary, in the case at hand, the chancery court erred in granting the defendants summary judgment when under the law, Harris had not waived his claim for wrongful foreclosure damages.

## II. There was a genuine issue of material fact as to whether Harris's debt had been canceled, thereby precluding summary judgment on the wrongful foreclosure claim.

¶74. The chancery court held that there was no genuine issue of material fact concerning whether and/or how much Harris owed so as to justify the foreclosure. The court held that (1) the Form 1099-C by itself does not prove that the debt was canceled and that Harris failed to submit any other supporting proof that it was, and further (2) that Nationstar had sent the Form 1099-C in error. However, the chancery court ignored Nationstar's internal records that supported Harris's contention that the Form 1099-C was issued because Nationstar had decided to charge off the debt as a loss. Moreover, Nationstar provided no affidavits or other sworn testimony to establish that the 1099-C was issued in error. Thus, instead of finding a material dispute of fact, the chancery court erroneously decided a material fact in this case,

---

[9] Even if the notice violation was not pled with specificity, because Harris had originally pled wrongful foreclosure and breach of contract, the amended complaint raised no new cause of action. Thus, the amendment would relate back to the date of the original complaint under Mississippi Rule of Civil Procedure 15(c)(1), which provides that "whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

i.e., that Nationstar had issued the Form 1099-C in error. Accordingly, the summary judgment must be reversed.

> A. *The Form 1099-C and Nationstar account record created a dispute of material fact as to whether Harris owed anything at the time of the foreclosure.*

¶75. Harris contends he did not owe anything at the time of the foreclosure because Nationstar had canceled the debt in 2015. To support his claim, Harris points to the issued Form 1099-C that Nationstar sent in March 2015. This form instructs the recipient of his or her obligation to include the amount of a discharged debt as other income on his tax return and pay taxes on it. It explains there are two reasons why the form is issued by the creditor:

**Instruction for Debtor**

You received this form because. . . an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, *or* because of an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more.

(Emphasis added). There are eight "identifiable events" listed in 26 C.F.R. § 1.6050P-1(b)(2)(i), including:

(A) A discharge of indebtedness under title 11 of the United States Code (bankruptcy);
(B) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable in a receivership, foreclosure, or similar proceeding in a federal or State court, as described in section 368(a)(3)(A)(ii) (other than a discharge described in paragraph (b)(2)(i)(A) of this section);
(C) A cancellation or extinguishment of an indebtedness upon the expiration of the statute of limitations for collection of an indebtedness, subject to the limitations described in paragraph (b)(2)(ii) of this section, or upon the expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding;
(D) A cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or

bars the creditor's right to pursue collection of the indebtedness;

(E) A cancellation or extinguishment of an indebtedness that renders a debt unenforceable pursuant to a probate or similar proceeding;

(F) A discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration; or

(G) A discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt.

Harris's Form 1099-C did not list anything in Box #6, the "identifiable event code" section of the form, but looking at the eight events, there were two that were applicable to Harris's situation: Event F applied if Nationstar finally credited Harris's account for the payments he made for the 2010, 2011, and 2012 delinquent taxes and applied the unused escrow funds to the principal, thus paying off or settling the debt; or Event G applied if Nationstar decided to discontinue collection and discharge the debt in light of the tax payments Harris had made plus he had not made a payment since August 2013.

¶76.    However, because no event was listed in the event code section of the Form 1099-C, the first basis for the form's issuance, i.e., that Nationstar had decided to cancel or forgive the debt, could also apply. Either way, Harris understood from the form that the debt was canceled and he included the forgiven amount on his tax return and paid taxes on it. At no point did Harris receive anything from the IRS indicating that the 1099-C form had been withdrawn, nor did he receive a refund from the IRS for the taxes he paid on this amount if there had been some withdrawal of the Form 1099-C. Harris also contended that he did not receive the retraction letter Nationstar alleges it sent. Therefore, from 2015 through the filing of his lawsuit in 2022 (just shy of seven years), Harris reasonably relied on the 1099-C form

36

that the debt was discharged or forgiven.

¶77. Some courts have held that the issuance of a Form 1099-C constitutes prima facie evidence that a debt has been discharged for summary judgment purposes. In *Amtrust Bank v. Fossett*, 224 P. 3d 935, 937 (¶2) (Ariz Ct. App. 2009), the Fossetts failed to make payments to Amtrust on their car, which was then repossessed and sold. There remained a $19,726.87 deficiency, which the Fossetts also did not pay. *Id.* Two years later, the Fossetts received a 1099-C Cancellation of Debt form. *Id.* They reported the Form 1099-C amount on their tax return and paid the additional taxes owed. *Id.* Amtrust later sued the Fossetts for the deficiency, and the Fossetts filed a motion for summary judgment, asserting that the debt had been canceled as shown by the 1099-C form. *Id.* at (¶3). Amtrust responded with an affidavit from its collection manager, who said that even though Amtrust issued the form, Amtrust did not intend to renounce the debt. *Id.* at 937 (¶9). The Arizona Court of Appeals held that "[i]n responding to the Fossetts' motion, Amtrust submitted evidence (by way of the affidavit referenced supra) sufficient to create a genuine issue of material fact about whether it intended to cancel the debt and whether, as a consequence, the debt was discharged." *Id.* at (¶12).

¶78. In *Franklin Credit Mgmt. Corp. v. Nicholas*, 812 A.2d 51, 60 (Conn. App. Ct. 2002), the Appellate Court of Connecticut held that under Connecticut law, Form 1099-C was sufficient evidence to determine that a debt had been discharged when the lender argued it had issued the form by mistake but presented no evidence of mistake. In that case, Thomas Nicholas and his wife, Ella Brown, mortgaged their home with a local bank in 1989 but

defaulted in 1991. *Id*. at 831-32. The bank failed and was taken over by the Resolution Trust (RST). *Id*. at 832. Brown and Nicholas separated, and Brown filed for bankruptcy, listing the debt as one to be discharged. *Id*. RST issued a Form 1099-C to both Nicholas and Brown. *Id*. Nicholas included the amount in his income tax return. *Id*. Franklin Credit purchased the note and began a foreclosure action against Nicholas. *Id*. Nicholas raised as a defense that the debt had been discharged and released pursuant to the Form 1099-C. *Id*. The trial court found in favor of Nicholas, and Franklin Credit appealed. *Id*. at 832-33. On appeal, the Connecticut Appellate Court held:

> The [trial] court found that after the defendant had put form 1099-C into evidence, Franklin Credit presented no evidence that the form was intended to discharge Brown's debt alone. Franklin Credit presented no evidence of the practices and procedures of Resolution Trust [who assigned the loan to Franklin] or whether a mistake had occurred or how the mistake had occurred.

> We therefore conclude that the court properly determined that, in the absence of any evidence to support the claim of mistake, the defendant had proven that the note was discharged, and that the court did not improperly shift the burden of persuasion to Franklin Credit to prove mistake.

*Id*.

¶79.    Similarly, an Illinois appellate court held that the financial institution is not entitled to summary judgment unless it provides sufficient proof that the debt had not been canceled when it issued a Form 1099-C. *In re Est. of Hofer*, 42 N.E. 3d 480, 487 (¶¶32-33) (Ill. App. Ct. 2015). There, a bank filed a claim in a probate proceeding for a debt that the bank contended the deceased owed the bank. *Id*. at 481 (¶1). The bank moved for summary judgment, and the estate argued, among other things, that the bank had issued the decedent a Form 1099-C in 2004, indicating that the debt had been canceled long before the

38

deceased's death in 2010. *Id.* at 482 (¶¶5, 6). The record included the decedent's hand-written ledger, in which he noted on December 30, 2004, that $129,000 on loan number 30759 was "charged to the Reserve for Bad Debts." *Id.* at 482 (¶5). Also in the record was the bank's electronic ledger, which showed that on that same day, December 30, 2004, a balance of $129,000 for loan number 30759 was "charged off." *Id.* The bank attached two affidavits from bank employees, but neither explained the Bank's noting the loan as "charged off" in its ledgers, nor the circumstances leading to the cancellation of the note on December 30, 2004, of the filing of the Form 1099-C. *Id.* at 482-83 (¶¶10, 11). The trial court granted the bank's motion for summary judgment based on *F.D.I.C. v. Cashion*, 720 F.3d 169 (4th Cir. 2013), a case cited by the majority opinion here. *Hofer*, 42 N.E.3d at 483 (¶14). On appeal, the Illinois Court of Appeals reversed the trial court. *Id.* at 487 (¶34). The appellate court noted that there is a qualitative difference between a cancellation and a discharge and that the bank had the burden of proving that the debt was not discharged in light of its issuance of the Form 1099-C. *Id.* at (¶31). The Court further said that the bank failed to meet this burden, noting that the affidavits of the bank employees were silent as to any reason for or the circumstances surrounding the filing of the Form 1099-C. *Id.* at (¶32).

¶80.    In the case at hand, Nationstar and the other defendants similarly failed to present any proof for their claimed "mistake" in issuing Harris's Form 1099-C. They provided no sworn affidavits or testimony to establish that Harris's debt was not canceled or forgiven as the Form 1099-C had communicated to Harris. Moreover, Nationstar's own records show that in December 2014, Nationstar employee Ramie Baker approved the account for being

39

charged off that month. The debt was entered into Nationstar's loss records, and the lien was charged off. Nationstar's records support Harris's claim that the debt had been discharged or forgiven. Like the bank in *Hofer*, Nationstar provided no affidavits to explain why it issued the Form 1099-C, and even more importantly, no affidavits to explain why it retracted the Form 1099-C eighteen months after issuing it.

¶81. Harris's facts are not similar to those in *Cashion*, where Cashion presented only the 1099-C form. Here, there is additional evidence in Nationstar's internal records to support Harris's claims. Moreover, "Cashion's claim of cancellation or assignment of the Note [was] based solely on the 1099-C Form. He never proffered a reason for cancellation or any evidence besides the 1099-C Form he received to prove cancellation." *Cashion*, 720 F.3d at 180. Here, Harris had a reason for the cancellation, namely, he had paid the 2010, 2011, and 2012 delinquent taxes, which, when added to the funds Nationstar had held in escrow for these tax payments, should have paid off the debt.

¶82. In light of the evidence in the record, the 1099-C form Nationstar sent to Harris, and Nationstar's *own internal records* showing that Nationstar had intended to cancel the debt, Harris provided sufficient evidence to create a dispute of material fact as to whether his debt had been canceled to survive summary judgment.

> **B.** *The court impermissibly decided a material fact in dispute*.

¶83. The chancery court further determined that Nationstar had issued the Form 1099-C "in error," a material fact in dispute, without any sworn testimony to support that finding.

¶84. "On a motion for summary judgment, a court does not try issues of fact; it can only

determine whether there are issues to be tried." *Elston v. Circus Circus Miss. Inc*., 908 So. 2d 771, 773 (¶7) (Miss. Ct. App. 2005) (citing *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1209-10 (¶6) (Miss. 2001)). "A summary judgment motion does not place the trial court in the role of weighing testimony and determining the credibility of witnesses." *Laird v. EAN Holdings LLC*, 422 So. 3d 1100, 1104 (¶12) (Miss. Ct. App. 2025).

¶85.    In *Williams v. City of Batesville*, 313 So. 3d 479, 489 (¶57) (Miss. 2021) (Griffis, J., concurring in part), the separate opinion concurring in part would have reversed the grant of summary judgment in favor of the City in an eminent domain case because "there [were] no documents, evidence, sworn testimony, or any other reliable or credible evidence to support the facts relied on." This concurring opinion criticized the trial court's improper reliance on "the City's lawyer's argument." *Id.* In addition, the concurring opinion asserted that "under no circumstance may the court resolve a disputed issue of fact." *Id*. at 491 (¶63).

¶86.    Clearly, in the case at hand, there were undisputed facts, i.e., that Harris had paid delinquent taxes that Nationstar should have paid, that Harris stopped paying his note in light of this controversy, and that Nationstar issued a Form 1099-C. But later, Nationstar claimed this was error, which Harris disputed. Harris also disputed whether Nationstar issued the Form 1099-C in error, and Nationstar disputed that it had discharged, canceled or forgiven Harris's debt. But Nationstar presented no testimony or affidavit to contradict its records that the 1099-C form was issued because Nationstar had charged off Harris's debt. Nor did Nationstar present any evidence of what happened in June 2017 that led it to retract the Form 1099-C. As was stated in the separate opinion in *Williams*, Rule 56 of the Mississippi Rules

of Civil Procedure obligates a party to present evidence on the facts it seeks to establish. *Id.* at 492 (¶68). Without such evidence, the chancery court here had no basis to find that the Form 1099-C was issued by mistake.

¶87. In summary, in my opinion, Harris provided sufficient evidence to create a genuine issue of material fact concerning whether his debt had been discharged or forgiven to preclude summary judgment. Moreover, the chancery court impermissibly made a factual finding on an issue in dispute, i.e., whether the Form 1099-C had been issued in error.

## Conclusion

¶88. I disagree with the majority when it holds that Harris had forfeited or waived his claim for wrongful foreclosure damages when, under *Soffra*, the violation of the deed of trust notice provision rendered the sale of Harris's property void. Moreover, Harris did object in a timely manner. I further disagree with the majority's holding that Harris failed to present sufficient proof of his claim that his debt had been forgiven by Nationstar, when he presented the IRS Form 1099-C and Nationstar's own records confirmed the discharge. Nationstar provided no evidence, in the form of affidavits or sworn testimony, to support its claim that the 1099-C form had been issued in error. The chancery court erred in resolving this disputed issue of fact. Accordingly, I would reverse and remand for further proceedings.

**WESTBROOKS AND LASSITTER ST. PÉ, JJ., JOIN THIS OPINION. BARNES, C.J., JOINS THIS OPINION IN PART.**